## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TEMPLAR ENERGY LLC, *et al.*,[1] | Case No. 20- 11441 (   ) |
| Debtors. | (Joint Administration Requested) |

## JOINT PREPACKAGED PLAN OF LIQUIDATION OF
## TEMPLAR ENERGY LLC AND ITS DEBTOR AFFILIATES
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta
Robert A. Britton
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Pauline K. Morgan
Jaime Luton Chapman
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253

*Proposed Counsel to the Debtors and Debtors in Possession*

Dated: May 31, 2020

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Templar Energy LLC (4719), TE Holdcorp, LLC (6730), TE Holdings, LLC (3115), TE Holdings II, LLC (N/A), Templar Operating LLC (0810), Templar Midstream LLC (3275), and TE Holdings Management LLC (7467).  The address of the Debtors' corporate headquarters is 4700 Gaillardia Parkway, Suite 200, Oklahoma City, Oklahoma 73142.

# TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND
    GOVERNING LAW ...................................................................................................................1
    A.    Defined Terms ..........................................................................................................1
    B.    Rules of Interpretation ...........................................................................................13
    C.    Computation of Time .............................................................................................14
    D.    Governing Law .......................................................................................................14
    E.    Reference to Monetary Figures ..............................................................................14

ARTICLE II. ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS AND INTERCOMPANY CLAIMS ............15
    A.    Administrative Expense Claims .............................................................................15
    B.    Priority Tax Claims ................................................................................................17
    C.    Statutory Fees .........................................................................................................17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ....................................17
    A.    Introduction............................................................................................................17
    B.    Summary of Classification .....................................................................................17
    C.    Treatment of Claims and Interests .........................................................................18
    D.    Special Provision Governing Unimpaired Claims .................................................21
    E.    Elimination of Vacant Classes ...............................................................................21

ARTICLE IV. ACCEPTANCE REQUIREMENTS ...........................................................................................21
    A.    Acceptance or Rejection of this Plan .....................................................................22
    B.    Confirmation of This Plan Pursuant to Section 1129(b) of the Bankruptcy Code .........................22
    C.    Controversy Concerning Impairment .....................................................................22

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ...................................................................23
    A.    Transactions Effective as of the Effective Date ....................................................23
    B.    Sale Transaction .....................................................................................................23
    C.    Contribution of Holdings Class I Units and Holdings Class E Units to Holdcorp.......................23
    D.    Conversion of Class A Common Units and Class A Preferred Units of TE Holdings, LLC .........24
    E.    The Plan Administration Process ...........................................................................24
    F.    Certain Powers and Duties of the Plan Administrator............................................24
    G.    Authority to Assert, Settle, or Abandon Debtors' Retained Defenses and Counterclaims.............25
    H.    Cancellation of Documents ....................................................................................25
    I.    Filing of Monthly and Quarterly Reports and Payment of Statutory Fees .....................................26
    J.    Members, Managers, and Officers of the Debtors .................................................26
    K.    Corporate Authorization .........................................................................................27
    L.    Director and Officer Liability Insurance ................................................................27
    M.    Effectuating Documents and Further Transactions ...............................................27
    N.    Employee Benefits .................................................................................................27
    O.    Exemption from Certain Taxes and Fees ...............................................................27

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.............................28
    A.    Treatment of Executory Contracts and Unexpired Leases ....................................28
    B.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases...........28
    C.    Rejection Damages Claim ......................................................................................28
    D.    Reservation of Rights.............................................................................................29
    E.    Nonoccurrence of Effective Date ..........................................................................29

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS.....................................................................29
    A.    Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions ...................29
    B.    Disbursing Agent ...................................................................................................30
    C.    Distributions on Account of Claims Allowed After the Effective Date.........................................30
    D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions................................31
    E.    Compliance with Tax Requirements/Allocations...................................................31

| | | |
|---|---|---|
| F. | Surrender of Cancelled Instruments or Securities | 32 |
| G. | Claims Paid or Payable by Third Parties | 32 |

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS .................................................................................................. 33
| | | |
|---|---|---|
| A. | Disputed Claims | 33 |
| B. | Disputed Secured and Priority Claims Reserve | 33 |
| C. | Estimation of Claims | 34 |

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE ........................................................................................................... 34
| | | |
|---|---|---|
| A. | Conditions Precedent to Confirmation | 34 |
| B. | Conditions Precedent to the Effective Date | 35 |
| C. | Waiver of Conditions | 36 |
| D. | Effect of Nonoccurrence of Conditions | 36 |

ARTICLE X. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS ................ 36
| | | |
|---|---|---|
| A. | Compromise and Settlement of Claims, Interests, and Controversies | 36 |
| B. | Releases by the Debtors | 36 |
| C. | Releases by Holders of Claims and Interests | 37 |
| D. | Exculpation | 38 |
| E. | Non-Discharge of the Debtors; Injunction | 38 |
| F. | Setoffs | 39 |
| G. | Release of Liens | 40 |
| H. | Recoupment | 40 |

ARTICLE XI. BINDING NATURE OF PLAN ............................................................................ 40

ARTICLE XII. RETENTION OF JURISDICTION ..................................................................... 40

ARTICLE XIII. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ............... 43
| | | |
|---|---|---|
| A. | Modifications and Amendments | 43 |
| B. | Effect of Confirmation on Modifications | 43 |
| C. | Revocation or Withdrawal of the Plan | 43 |
| D. | Substantial Consummation of the Plan | 43 |

ARTICLE XIV. MISCELLANEOUS PROVISIONS .................................................................... 43
| | | |
|---|---|---|
| A. | Successors and Assigns | 43 |
| B. | Reservation of Rights | 44 |
| C. | Consent Rights | 44 |
| D. | Further Assurances | 44 |
| E. | Payment of Fees and Expenses | 44 |
| F. | Service of Documents | 44 |
| G. | Dissolution of Committee | 45 |
| H. | Nonseverability of Plan Provisions | 45 |
| I. | Return of Security Deposits | 46 |
| J. | Entire Agreement | 46 |
| K. | Exhibits | 46 |
| L. | Votes Solicited in Good Faith | 46 |
| M. | Closing of Chapter 11 Cases | 46 |
| N. | Conflicts | 47 |
| O. | Filing of Additional Documents | 47 |
| P. | Tax Reporting and Compliance | 47 |

## INTRODUCTION

Templar Energy LLC, TE Holdcorp, LLC, TE Holdings, LLC, TE Holdings II, LLC, Templar Operating LLC, Templar Midstream LLC, and TE Holdings Management LLC (each, a "***Debtor***" and, collectively, the "***Debtors***") propose the following joint prepackaged chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor. Capitalized terms used herein shall have the meanings set forth in Article I.A.

Holders of Claims and Interests may refer to the Disclosure Statement for a description of the Debtors' history, business, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan and the transactions contemplated thereby. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS AND INTERESTS, AS APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

### ARTICLE I.

### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

*A.    Defined Terms*

The following terms shall have the following meanings when used in capitalized form herein:

1.    "*503(b)(9)Claims*" means Claims arising under section 503(b)(9) of the Bankruptcy Code against a Debtor for which a Proof of Claim was filed on or before the General Claims Bar Date.

2.    "*Administrative Claims Bar Date*" means the first Business Day that is 30 days following the Effective Date.

3.    "*Administrative Expense Claim*" means any right to payment constituting a cost or expense of administration incurred during the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the business of the Debtors (such as wages, salaries, commissions for services, and payments for goods), (b) Fee Claims, (c) Statutory Fees, and (d) 503(b)(9) Claims.

4.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.    "*Allowed*" means, with reference to any Claim, (a) a Claim that has been listed by the Debtors in the Schedules as liquidated in amount and not "disputed" or "contingent," and with respect to which no contrary Claim has been timely filed, (b) a Claim that has been timely filed by the applicable Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or Final Order is not or shall not be required to be Filed), has not been withdrawn, and as to which no objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, unless any such objection or request has been withdrawn, or (c) a Claim that is allowed (i) by a Final Order, (ii) pursuant to the terms of the Plan, or (iii) by an agreement entered into between the Holder of such Claim and the Plan Administrator on or after the Effective Date.    For purposes of computing Distributions under the Plan, a Claim that has been deemed "Allowed" shall not include interest, costs, fees, or charges on such Claim or Interest from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in the Plan.

6.    "*Avoidance Actions*" means any and all claims and Causes of Action which any of the Debtors, the Debtors in Possession, the Estates, or any other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

7.    "*Balloting Agent*" means Kurtzman Carson Consultants LLC, in its capacity as notice and balloting agent for the Debtors.

8.    "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received by the Balloting Agent on or before the Voting Deadline.

9.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as may be amended from time to time.

10.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under section 157 of title 28 of the United States Code, the United States District Court for the District of Delaware.

11.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated by the United States Supreme Court under 28 U.S.C. § 2075 and the general, local, and chambers rules of the Bankruptcy Court, as each may be amended from time to time.

12.    "*Bar Date*" shall mean, with respect to any particular Claim, the specific date set by the Bankruptcy Court as the last day for Filing proofs of Claim or request for allowance of Administrative Expense Claims in the Chapter 11 Cases for that specific Claim.

13.    "*Bidding Procedures Order*" means the order of the Bankruptcy Court approving bidding procedures for the Debtors' asset marketing and sale process.

14.    "*Business Day*" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, NY are authorized or required by law or executive order to close.

15.    "*Buyer*" means the bidder with the highest or otherwise best offer prevailing in the Debtors' Sale process.

16.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

17.    "*Cause of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws).  For the avoidance of doubt, Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any state law fraudulent transfer claim.

18.    "*Certificate*" means any instrument evidencing an extinguished Claim or Interest.

19.    "*Chapter 11 Cases*" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court.

20.    "*Claim*" means a "claim," as defined in section 101(5) of the Bankruptcy Code, as against any Debtor.

21.    "*Claims Agent*" means Kurtzman Carson Consultants LLC, in its capacity as claims agent for the Debtors.

22.    "*Claims Objection Deadline*" shall mean 60 days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court.

23.    "*Class*" means a category of Claims or Interests as set forth in Article III hereof pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

24.  "*Committee*" means any official committee of unsecured creditors (and all subcommittees thereof) appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as such committee may be reconstituted from time to time.

25.  "*Company*" means, collectively, Templar Energy LLC and its affiliates and subsidiaries that are Debtors in these Chapter 11 Cases.

26.  "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.A hereof having been: (a) satisfied; or (b) waived pursuant to Article IX.B.1 hereof.

27.  "*Confirmation Date*" means the date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

28.  "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation, as such hearing may be adjourned or continued from time to time in the Debtors' sole discretion.

29.  "*Confirmation Order*" means the order or orders of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

30.  "*Consenting Lenders*" means holders of RBL Claims that are signatories to the RSA, and any subsequent holder of RBL Claims that becomes party thereto in accordance with the terms of the RSA.

31.  "*Consummation*" means the occurrence of the Effective Date.

32.  "*Cure Claim*" means a Claim based upon a monetary default, if any, by any Debtor on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed or assumed and assigned by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

33.  "*D&O Policy*" means any insurance policy for directors, members, trustees, and officers liability issued at any time to or providing coverage to the Debtors and/or their directors, members, trustees, and officers, and all agreements, documents or instruments relating thereto.

34.  "*D&O Tail Coverage*" means coverage under an applicable director, manager, and officer liability insurance policy that extends beyond the end of the policy period.

35.  "*Debtor*" or "*Debtor in Possession*" means one of the Persons in the above-captioned cases, in its individual capacity as a debtor and debtor in possession in the Chapter 11 Cases under sections 1107 and 1108 of the Bankruptcy Code.

36.  "*Definitive Documents*" has the meaning ascribed to such term in the RSA.

37.  "*DIP Agent*" means Bank of America, N.A., in its capacity as administrative agent under the DIP Credit Agreement, together with its respective successors and assigns in such capacity.

4

38. "*DIP Claim*" means any Claim held by the DIP Agent or the DIP Lenders arising under, derived from, secured by or based on the DIP Credit Agreement or otherwise secured pursuant to the DIP Documents and the DIP Orders, which includes any Claim for all principal amounts outstanding (inclusive of any Roll-Up Loans as defined in the DIP Credit Agreement), interest, reasonable and documented fees, expenses, costs, and other charges of the DIP Agent and the DIP Lenders.

39. "*DIP Credit Agreement*" means that certain Credit Agreement, by and among the Debtors, the DIP Agent and the DIP Lenders party thereto, as may be amended, restated, supplemented, or otherwise modified from time to time, pursuant to which the DIP Financing is to be provided.

40. "*DIP Documents*" means the DIP Orders, the DIP Motion, the DIP Credit Agreement, any guaranty or intercreditor agreements related thereto, any collateral and security documentation related thereto, and any ancillary documentation related thereto.

41. "*DIP Financing*" means the post-petition senior secured superpriority revolving credit facility pursuant to the DIP Credit Agreement and authorized by the DIP Orders.

42. "*DIP Lenders*" means the lenders providing the DIP Financing pursuant to the terms of the DIP Credit Agreement.

43. "*DIP Motion*" means the motion filed by the Debtors seeking entry of the DIP Orders.

44. "*DIP Orders*" means the interim and final order(s) of the Bankruptcy Court authorizing, among other things, the Debtors to enter into and make borrowings under the DIP Financing and granting certain rights, protections, and liens to and for the benefit of the DIP Lenders.

45. "*Disallowed*" means all or that portion, as applicable, of any Claim that has been disallowed under the Plan, the Bankruptcy Code, applicable law or by a Final Order.

46. "*Disbursing Agent*" means the Plan Administrator; *provided*, however, the Plan Administrator, in its sole discretion, may retain a third party to make or facilitate distributions pursuant to the Plan.

47. "*Disclosure Statement*" means the *Disclosure Statement for Joint Prepackaged Plan of Liquidation of Templar Energy LLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*, dated May 31, 2020, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law.

48. "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest or any portion thereof that is neither an Allowed nor a Disallowed Claim or Interest.

49.    "*Disputed Secured and Priority Claims Reserve*" means the portion of the Debtors' Cash reserved on account of Disputed Claims, which may be funded on or after the Effective Date.

50.    "*Distribution Record Date*" means the Confirmation Date.

51.    "*Effective Date*" means the first Business Day on which (a) all of the conditions specified in Article IX.A.5 hereof have been satisfied or waived pursuant to Article IX.B.1 hereof and (b) no stay of the Confirmation Order is in effect.

52.    "*Effective Date Notice*" means the notice of Confirmation Order and Effective Date, which shall be Filed and served on or before five (5) Business Days after the Effective Date.

53.    "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

54.    "*Estate*" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

55.    "*Excess Fee Escrow Amount*" means all Cash held in the Fee Escrow Account after irrevocable payment in full of all Fee Claims Allowed by the Bankruptcy Court (including any Fee Claims incurred after the Confirmation Date).

56.    "*Excess Wind Down Amount*" means all Cash held by the Plan Administrator after the completion of the Wind Down.

57.    "*Exculpated Parties*" means, collectively, (a) the Debtors, (b) any statutory committee appointed in the Chapter 11 Cases, and (c) with respect to each of the foregoing Persons in clauses (a) through (b), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such; *provided* that David D. Le Norman, any of David D. Le Norman's family members, any entity owned or controlled by David D. Le Norman that is not a Debtor entity, and any such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, shall not be Exculpated Parties under the Plan, unless such Persons agree to grant the Releases by Holders of Claims and Interests contemplated by Article X.C hereof.

58.    "*Exculpation*" means the exculpation provision set forth in Article X.D hereof.

59.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

60.    "*Fee Claim*" means a claim for all professional services rendered and costs incurred on or after the Petition Date by a Professional, including estimates through the Effective Date, in connection with the Chapter 11 Cases.

61.    "*Fee Escrow Account*" means an interest-bearing account(s) to be funded by the Debtors on the Effective Date holding Cash in an amount equal to (a) the amount of accrued and unpaid Fee Claims that are known as of the Effective Date, plus (b) a reasonable estimate of any unknown accrued and unpaid Fee Claims as of the Effective Date, which estimate shall be subject to the approval of the RBL Agent and Requisite Lenders, such approval not to be unreasonably withheld.

62.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or other court of competent jurisdiction in the Chapter 11 Cases.

63.    "*Final Order*" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired; *provided*, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

64.    "*General Bar Date*" means the deadline for filing 503(b)(9) Claims, Priority Tax Claims, Other Priority Claims, and Other Secured Claims as established by an order of the Bankruptcy Court.

65.    "*General Unsecured Claim*" means (a) the RBL Deficiency Claims, and (b) any prepetition Claim against the Company that is not paid in full during the Chapter 11 Cases pursuant to an order of the Bankruptcy Court, and that is not a DIP Claim, an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, an Other Secured Claim, a RBL Secured Claim, or an Intercompany Claim.

66.    "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

67.    "*Holder*" means any Person or Entity holding a Claim or an Interest.

68.    "*Holdcorp*" means TE Holdcorp, LLC.

69.    "*Holdings*" means TE Holdings, LLC

70.    "*Impaired*" means any Claim or Interest in an Impaired Class.

71.    "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

72.    "*Insurance Contract*" means all insurance policies that have been issued at any time to or that provide coverage to any of the Debtors (including, but not limited to, any D&O Policies) and all agreements, documents, or instruments relating thereto.

73.    "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

74.    "*Intercompany Interest*" means an Interest in a Debtor held by another Debtor.

75.    "*Interest*" means any equity interest (as defined in section 101(16) of the Bankruptcy Code) in the Company, including all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest or other instrument, evidencing any fixed or contingent ownership interest in the Company, whether or not transferable, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Company, that existed immediately before the Effective Date.

76.    "*Interests in Holdcorp*" means any Interests in TE Holdcorp, LLC.

77.    "*Interests in Holdings*" means any Interests in TE Holdings, LLC that are not Intercompany Interests.

78.    "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

79.    "*KERP Amount*" means the amount necessary for Debtors to pay any amounts due on or after the Effective Date under the Debtors' Key Employee Retention Plan as approved by the Bankruptcy Court, which amount shall not exceed $1.08 million.

80.    "*Other Priority Claim*" means any Claim other than an Administrative Expense Claim or a Priority Tax Claim that is entitled to priority of payment as specified in section 507(a) of the Bankruptcy Code.

81.    "*Other Secured Claim*" means a Secured Claim other than a Priority Tax Claim, a DIP Claim, or an RBL Secured Claim.

82.    "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

83.    "*Petition Date*" means the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

84.    "*Plan*" means this *Joint Prepackaged Plan of Liquidation of Templar Energy LLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*, dated May 31, 2020, as the same may be amended, supplemented, or modified from time to time, including, without limitation, any exhibits hereto, which are incorporated herein by reference.

85. "*Plan Administration Agreement*" means the agreement among the Plan Administrator, the Debtors and the RBL Agent regarding the administration of the Plan Administration Process, which shall be acceptable to the Requisite Lenders, dated as of the Effective Date, and to be filed as part of the Plan Supplement.

86. "*Plan Administration Process*" means the process for resolving and paying Claims described in Article VIII hereof.

87. "*Plan Administration Assets*" means all of the assets of the Debtors not sold to the Buyer, including, without limitation, (a) the Wind Down Amount, and (b) any Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, including any Causes of Action relating to any Disputed Claims.

88. "*Plan Administrator*" means that person selected by the RBL Agent and the Requisite Lenders to act as the administrator of the Plan Administration Process, who may take the role of the trustee of a plan administration trust or a plan administration officer, *provided*, that the RBL Agent and the Requisite Lenders shall have the right to terminate and replace the Plan Administrator in accordance with the terms of the Plan Administration Agreement. The identity (to the extent known) and role of the Plan Administrator shall be set forth in Plan Administration Agreement.

89. "*Plan Supplement*" means the documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall include (a) the Plan Administration Agreement describing the role and/or identity (to the extent known) of the Plan Administrator and any agreement(s) (if any) governing the conduct of the Plan Administrator or the Plan Administration Process, (b) the Schedule of Retained Defenses and Counterclaims, and (c) the Wind Down Budget, and which shall be filed no later than seven days prior to the deadline to object to Confirmation; *provided*, that through the Effective Date, the Debtors shall have the right to amend, supplement, or otherwise modify the Plan Supplement in accordance with the terms of this Plan and the RSA.

90. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

91. "*Professional*" means a Person or Entity: (a) employed in the Chapter 11 Cases pursuant to a Bankruptcy Court order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code, excluding any ordinary course professional retained pursuant to a Bankruptcy Court order; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

92. "*Pro Rata*" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in a particular Class and other

Classes entitled to share in the same recovery as such Allowed Claim or Allowed Interest under the Plan.

93. "*Purchase Agreement*" means the asset purchase agreement to be executed between the Buyer and all or certain of the Debtors.

94. "*RBL Advisor Fees*" means the reasonable and documented fees and expenses incurred by co-counsel to the DIP Agent and RBL Agent, Morgan, Lewis & Bockius LLP and Richards, Layton & Finger, P.A., and the financial advisor to the DIP Agent and RBL Agent, RPA Advisors, LLC.

95. "*RBL Agent*" means Bank of America, N.A., in its capacity as administrative agent under the RBL Credit Agreement and any other applicable RBL Credit Documents.

96. "*RBL Claim*" means any Claim of the RBL Agent or the RBL Lenders arising under, derived from, secured by or based on the RBL Credit Agreement or otherwise secured pursuant to the RBL Credit Documents and shall include, without limitation, any Claim held by affiliates of the RBL Lenders for cash management and hedging Obligations (as defined under the RBL Credit Agreement).

97. "*RBL Credit Agreement*" means that certain First Lien Credit Agreement dated as of November 25, 2013 and amended as of August 1, 2019 by that certain Sixth Amendment, by and among Templar Energy LLC, the guarantors party thereto, the RBL Lenders, and the RBL Agent.

98. "*RBL Credit Documents*" means the RBL Credit Agreement and any related security, guaranty, or other documents.

99. "*RBL Credit Facility*" means the revolving credit facility provided for under the RBL Credit Agreement.

100. "*RBL Deficiency Claims*" means the RBL Claims minus the RBL Recovery.

101. "*RBL Lenders*" means the lenders under the RBL Credit Agreement from time to time.

102. "*RBL Recovery*" means all Cash held by the Estates as of the Effective Date, plus the Sale Proceeds, minus (a) Cash in an amount sufficient to pay the DIP Claims in full, (b) the Wind Down Amount, and (c) the funding of the Fee Escrow Account under the Plan; *provided* that the Excess Wind Down Amount (if any) and the Excess Fee Escrow Amount (if any) shall be included in the RBL Recovery.

103. "*RBL Secured Claim*" means the portion of any RBL Claim that is secured by valid, perfected, and enforceable liens (including any adequate protection lien), to the extent of the value of all collateral securing the RBL Claims.

104. "*Released Party*" means, collectively, and in each case in its capacity as such, (a) the Debtors, (b) the Consenting Lenders, (c) the RBL Agent, (d) the DIP Agent and DIP

Lenders under the DIP Financing, (e) the Buyer, (f) any official committee and its members, and (g) with respect to each of the foregoing Persons, in clauses (a) through (f), each of their affiliates, and each of their and their affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such; *provided* that David D. Le Norman, any of David D. Le Norman's family members, any entity owned or controlled by David D. Le Norman that is not a Debtor entity, and any such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, shall not be Released Parties under the Plan, unless such Persons agree to grant the Releases by Holders of Claims and Interests contemplated by Article X.C hereof.

105. "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) the holders of all Claims or Interests who vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests who are Unimpaired under the Plan and who do not file a timely objection to the releases provided for in the Plan, (e) the Released Parties, and (f) with respect to each of the foregoing Persons, in clauses (a) through (e), each of their affiliates, and each of their and their affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

106. "*Requisite Lenders*" means, as of the date of determination, Consenting Lenders holding more than one-half in amount of the outstanding RBL Claims as of such date.

107. "*Retained Defenses and Counterclaims*" means all of the Debtors' defenses and counterclaims to any Causes of Action that have been or could be brought against the Debtors, that are not transferred to the Buyer, including any defenses with respect to Disputed Claims; *provided* that with respect to any General Unsecured Claims, the Debtors' defenses and counterclaims shall only be preserved to the extent necessary to set off or reduce any such General Unsecured Claim.

108. "*RSA*" means that certain Restructuring Support Agreement, dated May 31, 2020, by and among the Debtors, the Consenting Lenders, and the RBL Agent.

109. "*Sale*" means the sale of all or substantially all of the Company's assets free and clear of all liens, claims, encumbrances and other interests pursuant to sections 105, 363, and 365 of the Bankruptcy Code to the Buyer(s) in accordance with terms and conditions hereof and in form and substance reasonably acceptable to the DIP Agent, Requisite Lenders and the RBL Agent.

110. "*Sale Order*" means the order or orders of the Bankruptcy Court which, among other things, (i) approves the Sale, (ii) approves the assumption by the Company (and, if applicable, assignment to the Buyer(s)) of any contracts pursuant to section 365 of the Bankruptcy Code, and (iii) contains findings of fact and conclusions of law that the Buyer(s) is or are a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

111. "*Sale Process*" means the process for the marketing and sale of all or substantially all of the Debtors' assets pursuant to the Bidding Procedures Order.

112. "*Sale Proceeds*" means any net proceeds actually received by the Debtors upon closing of the Sale.

113. "*Schedule of Defenses*" means the schedule of the Debtors' defenses to any Causes of Action that could be brought against the Debtors, to be retained by the Estates and contributed to the Plan Administration Assets, which schedule will be filed with the Plan Supplement.

114. "*Schedules*" means the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

115. "*Secured*" means: when referring to a Claim:  (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code; or (b) otherwise Allowed pursuant to this Plan as a Secured Claim.

116. "*Severance Amount*" means the amount necessary to pay any amounts due as of the Effective Date under the Debtors' severance plan as approved by the Bankruptcy Court, which amount shall not exceed $650,000.

117. "*Statutory Fees*" means all fees for which the Debtors are obligated pursuant to  28 U.S.C. § 1930(a)(6), together with interest, if any, pursuant to 31 U.S.C. § 3717.

118. "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

119. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

120. "*U.S. Trustee*" means the United States Trustee for the District of Delaware.

121. "*Voting Class*" means Class 3 RBL Secured Claims.

122. "*Voting Deadline*" means 9:00 p.m. (prevailing Eastern Time) on May 31, 2020.

123. "*Voting Record Date*" means May 26, 2020.

124. "*Wind Down*" means the process of winding down the Debtors' business after closing of the Sale.

125. "*Wind Down Account*" means a segregated account maintained by the Debtors into which the Wind Down Amount will be deposited on or prior to the Effective Date.

126. "*Wind Down Amount*" means Cash in an amount sufficient to (a) administer the Plan (including payment in full in Cash or such other treatment as to render Unimpaired all Allowed Administrative Expense Claims, Priority Tax Claims, Other Secured Claims, and Other Priority Claims), (b) wind down the Estates, (c) fund the Disputed Secured and Priority Claims Reserve, and (d) conduct the Plan Administration Process, all in accordance with the Wind Down Budget; but which shall in no event exceed $3.0 million (excluding any amounts funded by the Buyer to pay taxes relating to the Sale), plus the Severance Amount, plus the KERP Amount, unless otherwise agreed by the Debtors, the RBL Agent, and the Requisite Lenders.

127. "*Wind Down Budget*" means a budget to be prepared by the Debtors, which shall be acceptable to the RBL Agent and the Requisite Lenders and may be modified from time to time with the consent of the RBL Agent and the Requisite Lenders, to be filed with the Plan Supplement, which budget shall estimate the funds necessary to administer the Plan (including payment in full in Cash or such other treatment as to render Unimpaired all Allowed Administrative Expense Claims (excluding DIP Claims and Fee Claims), Priority Tax Claims, Secured Claims, and Other Priority Claims), pay certain amounts under the Plan, wind down the Estates, fund the Disputed Secured and Priority Claims Reserve, and conduct the Plan Administration Process.

B.    *Rules of Interpretation*

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (b) unless otherwise specified, any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference in this Plan to an existing document, schedule, or exhibit, whether or not Filed, shall mean such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented; (d) any reference to an Entity as a Holder of a Claim or Interest

13

includes that Entity's successors and assigns; (e) unless otherwise specified, all references in this Plan to Articles are references to Articles of this Plan or to this Plan; (f) the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (h) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) unless otherwise set forth in this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) any term used in capitalized form in this Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (k) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (l) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (m) any immaterial effectuating provisions may be interpreted by the Debtors or the Plan Administrator in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.      *Computation of Time*

In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply.  If a payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall instead occur on the next succeeding Business Day, but shall be deemed to have occurred as of the required date.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided*, however, that corporate governance matters relating to the Debtors not incorporated in Delaware shall be governed by the laws of the jurisdiction of incorporation of the applicable Debtor.

E.      *Reference to Monetary Figures*

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**ARTICLE II.**

## ADMINISTRATIVE CLAIMS, PRIORITY
## CLAIMS AND INTERCOMPANY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in <u>Article III</u>.

*A.    Administrative Expense Claims*

1.    General Administrative Expense Claims

Except with respect to Administrative Expense Claims that are Fee Claims, DIP Claims, or Statutory Fee Claims, and except to the extent that a Holder of an Allowed Administrative Expense Claim and the applicable Debtors agree to less favorable treatment for such Holder's Allowed Administrative Expense Claim, each Holder of an Allowed Administrative Expense Claim shall be paid in full in Cash on the latest of: (a) the Effective Date; (b) the first Business Day after the date that is (30) calendar days after the date such Administrative Expense Claim is Allowed; and (c) the date such Allowed Administrative Expense Claim becomes due and payable.

Holders of Administrative Expense Claims arising from the Petition Date through the Effective Date (other than Fee Claims, DIP Claims and Statutory Fee Claims) shall file with the Claims Agent and serve on the Plan Administrator requests for payment, in writing, that together with supporting documents, substantially comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, **so as to actually be received on or before the Administrative Claims Bar Date**. Any such Claim not filed by the Administrative Claims Bar Date shall be deemed waived and the Holder of such Administrative Expense Claim shall be forever barred from receiving payment on account thereof. For the avoidance of doubt, the deadline for filing request for payment of 503(b)(9) Claims shall be the General Bar Date, which deadline is not extended by the Plan nor the Confirmation Order. The Effective Date Notice shall set forth the Administrative Claims Bar Date and shall constitute notice of such Bar Date. Objections to requests for payment of Administrative Expense Claims (other than Fee Claims) must be Filed and served on the applicable Claim Holder by the Claims Objection Deadline.

*2. DIP Claims*

On the Effective Date, the DIP Claims shall be Allowed in the full amount due and owing under the DIP Credit Agreement. Except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, on the Effective Date, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim, each such Allowed DIP Claim shall be paid in full in Cash by the Debtors and all commitments under the DIP Agreement shall terminate. Upon the indefeasible payment or satisfaction of the DIP Claims in accordance with this Article II.A.2, on the Effective Date, all Liens granted to secure such obligations shall be terminated and of no further force and effect; *provided*, *however*, that any indemnification, expense reimbursement or other obligation of a Debtor that is contingent as

of the Effective Date shall survive the Effective Date and be paid by the Plan Administrator as and when due under the DIP Credit Agreement.

3.  *Fee Claims*

All Professionals seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 1103 of the Bankruptcy Code shall (a) file, on or before the date that is 30 days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Fee Claim. The Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

The Effective Date Notice shall set forth the Bar Date for final Fee Claims and shall constitute notice of such Bar Date. Any objections to final Fee Claims shall be served and filed no later than 14 days after the Filing of a final applications for compensation or reimbursement, unless otherwise agreed by the Plan Administrator and the applicable Professional requesting compensation of a Fee Claim.

On the Effective Date, the Debtors shall establish and fund the Fee Escrow Account. Funds held in the Fee Escrow Account shall not be considered property of the  Estates. The Debtors shall fund the Fee Escrow Account with Cash equal to (a) the amount of accrued and unpaid Fee Claims that are known as of the Effective Date, plus (b) a reasonable estimate of any unknown accrued and unpaid Fee Claims as of the Effective Date, which estimate shall be subject to the approval of the RBL Agent and Requisite Lenders, such approval not to be unreasonably withheld.  The Fee Escrow Account shall be held in trust for Professionals retained by the Debtors and for no other parties until all Fee Claims Allowed by the Bankruptcy Court, including any Fee Claims incurred after the Confirmation Date, have been paid in full. Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (a) on the date upon which a Final Order relating to any such Allowed Fee Claim is entered or (b) on such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors or the Plan Administrator, as applicable. The obligations of the Estates with respect to Fee Claims shall not be limited by nor deemed limited to the balance of funds held in the Fee Escrow Account. To the extent that funds held in the Fee Escrow Account are insufficient to satisfy the amount of accrued Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Expense Claim for any such deficiency, which shall be satisfied in accordance with the first paragraph of Article II.A.1 hereof. No Liens, claims, or interests shall encumber the Fee Escrow Account in any way, other than customary liens in favor of the depository bank at which the Fee Escrow Account is maintained.

For the avoidance of doubt, the Fee Escrow Account shall not be a Plan Administration Asset; *provided*, the Plan Administrator shall authorize payment of unpaid Fee Claims (once Allowed pursuant to a Final Order) and shall distribute any Cash remaining in the Fee Escrow Account, after irrevocable payment in full of all Fee Claims Allowed by the Bankruptcy Court

(including any Fee Claims incurred after the Confirmation Date), to the RBL Agent for distribution to the RBL Lenders.

B.    Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim and the applicable Debtors agree to less favorable treatment for such Holder's Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will be paid in full in Cash on the latest of: (a) the Effective Date; (b) the first Business Day that is thirty (30) calendar days after the date such Priority Tax Claim is Allowed; and (c) the date such Allowed Priority Tax Claim becomes due and payable.

C.    Statutory Fees

All Statutory Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Plan Administrator shall pay any and all Statutory Fees when due and payable from the Wind Down Account.  After the Effective Date, the Plan Administrator shall pay all Statutory Fees for each and every one of the Debtors until the earliest of that particular Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  Notwithstanding anything to the contrary in this Plan, the U.S. Trustee shall not be required to file a proof of claim for administrative expenses.

**ARTICLE III.**

**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

A.    Introduction

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

This Plan, though proposed jointly, constitutes a separate plan proposed by each Debtor.  Therefore, the classifications set forth in Article III.B herein apply separately with respect to each Plan proposed by each Debtor.  If there are no Claims or Interests in a particular Class for a particular Debtor, then such Class of Claims or Interests shall not exist for all purposes of the Plan for that Debtor.

B.    Summary of Classification

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

## SUMMARY OF STATUS AND VOTING RIGHTS

| Class | Claim/Interest | Status | Voting Rights |
|:-----:|----------------|:------:|:-------------:|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | RBL Secured Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Interests in Holdings | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Interests in Holdcorp | Impaired | Not Entitled to Vote (Deemed to Reject) |

C.      *Treatment of Claims and Interests*

    1.   Class 1:   Other Secured Claims

        (a)    *Classification*:  Each Class 1 Claim is an Other Secured Claim against the applicable Debtor.

        (b)    *Treatment*:  Except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the Debtors (with the consent of the Requisite Lenders, such consent not to be unreasonably withheld), each such holder will receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Other Secured Claim, one of the following alternative treatments:

            (i)    payment in full in Cash, payable on the later of the Effective Date and the date that is ten Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim or, in each case, as soon as reasonably practicable thereafter;

            (ii)    a distribution of the proceeds of the sale or disposition of the collateral securing such Allowed Other Secured Claim, in each case, solely to the extent of the value of the Holder's secured interest in such collateral;

(iii)  return of the collateral securing such Allowed Other Secured Claim; or

(iv)  such other treatment so as to render such Holder's Allowed Other Secured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)  *Voting*: Class 1 is Unimpaired.  Holders of Class 1 Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of such Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.  Class 2:   Other Priority Claims

(a)  Classification: Class 2 consists of all Other Priority Claims.

(b)  Treatment: Except to the extent that a holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Other Priority Claim, each holder of an Allowed Other Priority Claim will, at the option of the Debtors (with the consent of the Requisite Lenders, such consent not to be unreasonably withheld), (a) be paid in full in Cash, or (b) otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, payable on the later of the Effective Date and the date that is the first Business Day that is thirty (30) calendar days after the date on which such Other Priority Claim becomes an Allowed Other Priority Claim or, in each case, as soon as reasonably practicable thereafter.

(c)  *Voting*: Class 2 is Unimpaired.  Holders of Class 2 Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of such Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.  Class 3:   RBL Secured Claims

(a)  *Classification*:  Class 3 consists of all RBL Secured Claims.

(b)  *Allowance of RBL Claims*:  RBL Claims are deemed Allowed in the aggregate principal amount of $426,000,000, plus any interest, fees, and expenses due and owing pursuant to the terms of the Loan Documents (as defined in the RBL Credit Agreement) and less any Roll-Up Loans (as defined under the DIP Credit Agreement and approved by the DIP Orders) as of the Effective Date. The RBL Agent and the Holders of RBL Claims shall not be required to file proofs of Claim on account of either the RBL Secured Claims or the RBL Deficiency Claims.

(c)  *Treatment*:  Each Holder of a RBL Secured Claim shall receive, on the Effective Date, its Pro Rata share of the RBL Recovery.

(d)     *Voting*: Class 3 is Impaired.  Holders of Class 3 RBL Secured Claims are entitled to vote to accept or reject the Plan.

4.   Class 4:   General Unsecured Claims

(a)     *Classification*:  Class 4 consists of all General Unsecured Claims, including the RBL Deficiency Claim.

(b)     *Treatment*: Holders of General Unsecured Claims shall not receive or retain any distribution under the Plan on account of such General Unsecured Claims.

(c)     *Voting*:  Class 4 is Impaired.  Holders of Class 4 General Unsecured Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan.

5.   Class 5:   Intercompany Claims

(a)     *Classification*:  Class 5 consists of all Intercompany Claims.

(b)     *Treatment*:  Holders of Intercompany Claims shall not receive or retain any distribution under the Plan on account of such Intercompany Claims.

(c)     *Voting*:  Class 5 is Impaired.  Holders of Class 5 Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.   Class 6:   Intercompany Interests

(a)     *Classification*.  Class 6 consists of all Intercompany Interests.

(b)     *Treatment*:  Class 6 Intercompany Interests may be Reinstated as of the Effective Date solely for the purpose of facilitating the winding down and dissolution of each Debtor entity or, at the Debtors' option, be cancelled, and no distribution shall be made on account of such Interests.

(c)     *Voting*: Class 6 is either Unimpaired, in which case the Holders of Allowed Intercompany Interests in Class 6 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and not receiving any distribution under the Plan, in which case the Holders of such Allowed Intercompany Interests in Class 6 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each Holder of an Allowed Intercompany Interest in Class 6 will not be entitled to vote to accept or reject the Plan.

7. Class 7:    Interests in Holdings

   (a)    *Classification*:  Class 7 consists of all Interests in Holdings that are not Intercompany Interests.

   (b)    *Treatment:* Class 7 Interests in Holdings shall be cancelled, with the Holders of such Class 7 Interests in Holdings receiving no distribution on account of such Interests in Holdings.

   (c)    *Voting*:  Class 7 is Impaired.  Holders of Class 7 Interests in Holdings are entitled to vote to accept or reject the Plan.

8. Class 8:    Interests in Holdcorp

   (a)    *Classification*.  Class 8 consists of all Interests in Holdcorp.

   (b)    *Treatment*:  Class 8 Interests in Holdcorp shall be cancelled, with the Holders of such Class 8 Interests in Holdcorp receiving no distribution on account of such Interests in Holdcorp.

   (c)    *Voting*:  Class 8 is Impaired.  Holders of Class 8 Interests in Holdcorp are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Interests in Holdcorp are not entitled to vote to accept or reject the Plan.

D.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtors with respect to any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

E.    *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest, or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV.

## ACCEPTANCE REQUIREMENTS

Pursuant to sections 1126(c) and 1126(d) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, (a) an impaired class of claims has accepted a chapter 11 plan if the holders of at least two-thirds in dollar amount and more

than one-half in number of allowed claims in such class actually voting have voted to accept the plan and (b) an impaired class of interests has accepted the plan if the holders of at least two-thirds in amount of the allowed interests in such class actually voting have voted to accept the plan.

A.    *Acceptance or Rejection of this Plan*

1.    Voting Classes

Class 3 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

2.    Presumed Acceptance of the Plan

Classes 1 and 2 are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no Holder of Claims or Interests eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

3.    Deemed Rejection of the Plan

Classes 4, 5, 6, 7, and 8 are Impaired under the Plan and are not entitled to receive or retain any property on account of the Claims and Interests in Classes 4, 5, 6, 7, and 8.  Therefore, Classes 4, 5, 6, 7, and 8 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

B.    *Confirmation of This Plan Pursuant to Section 1129(b) of the Bankruptcy Code*

The Debtors intend to seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to modify the Plan in accordance with <u>Article XIII</u> hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by (i) modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules, and (ii) withdrawing the Plan as to an individual Debtor at any time before the Confirmation Date.

C.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests (or any Class of Claims or Interests) are Impaired under this Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or prior to the Confirmation Date.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Transactions Effective as of the Effective Date*

The transactions contemplated by the Plan shall be approved and effective as of the Effective Date, without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtors, their board of directors, their stockholders, or any other person or entity.

On or before the Effective Date, the Debtors will have consummated the Sale pursuant to the terms and conditions of the Purchase Agreement, including, without limitation, selling the Acquired Assets (as defined in the Purchase Agreement) free and clear of certain liens and encumbrances to the extent set forth in the Purchase Agreement, and assuming and assigning to the Buyer certain contracts and unexpired leases.

On the Effective Date, the Plan Administration Assets shall vest in the Debtors and their Estates for the purpose of liquidating the Plan Administration Assets and winding down the Estates, free and clear of all Liens, Claims, charges, and other encumbrances.

B.      *Sale Transaction*

Subject to the terms of the Purchase Agreement and any related documentation, on or prior to the Effective Date, the Debtors shall consummate the Sale and, among other things, the Acquired Assets (as defined in the Purchase Agreement) shall be transferred to and vest in the Buyer free and clear of all Liens, Claims, charges, or encumbrances pursuant to sections 363 and 1123 of the Bankruptcy Code, the Confirmation Order, the Purchase Agreement and any related documentation.   On the Effective Date, the Debtors shall consummate the transactions contemplated by the Purchase Agreement and any related documentation pursuant to the terms thereof; *provided* that, the conditions precedent set forth in the Purchase Agreement and any related documentation have been satisfied or waived in accordance with the terms thereof.  Upon entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under the Purchase Agreement and any related documentation will be deemed authorized and approved without any requirement of further act or action.   The Debtors are authorized to execute and deliver, and to consummate the transactions contemplated by, the Purchase Agreement and any related documentation, as well as to execute, deliver, file, record and issue any notes, documents (including UCC financing statements), or agreements in connection therewith, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

C.      *Contribution of Holdings Class I Units and Holdings Class E Units to Holdcorp*

During the Chapter 11 Cases, the Debtors contacted Holders of Class I Units and Class E Units at Holdings to inform such Holders of potential material adverse tax consequences to such Holders in connection with the consummation of the Sale and this Plan. Such Holders were provided with the option to contribute such Holder's Holdings Class I Units or Holdings Class E

Units to Holdcorp for no consideration and for Holdcorp's agreement to be treated as a member of Holdings, effective only upon and conditional upon the occurrence of the Effective Date. Any Holder of Class I Units or Class E Units who notified the Debtors, by June 12, 2020, of such Holder's intent to contribute the Holder's Class I Units or Class E Units to Holdcorp shall be deemed to have contributed such Class I Units or Class E Units to Holdcorp the day before the Effective Date.

D.     *Conversion of Class A Common Units and Class A Preferred Units of TE Holdings, LLC*

During the Chapter 11 Cases, the Debtors contacted Holders of Holdings Class A Common Units and Holdings Class A Preferred Units to inform such Holders of potential material adverse tax consequences to such Holders in connection with the consummation of the Sale and this Plan. Such Holders were provided with the option to convert their Holdings Class A Common Units and Holdings Class A Preferred Units to Holdcorp Class A Common Units and Holdcorp Class A Preferred Units, as applicable, in accordance with Section 5.2(a) and (b) and Schedule B of the Amended and Restated Limited Liability Company Agreement of TE Holdings, LLC, effective upon the earlier of (a) the occurrence of the Effective Date, or (b) the date that is 60 days after such Holder provided notice to the Debtors of the Holder's intention to convert such Holder's Units. Any Holder of Holdings Class A Common Units or Holdings Class A Preferred Units that notified the Debtors, by June 12, 2020, of such Holder's intent to convert the Holder's Holdings Class A Common Units and Holdings Class A Preferred Units to Holdcorp Class A Common Units and Holdcorp Class A Preferred Units, as applicable, in accordance with Section 5.2(a) and (b) and Schedule B of the Amended and Restated Limited Liability Company Agreement of TE Holdings, LLC, shall be deemed to have effectuated such conversion the day before the Effective Date.

E.     *The Plan Administration Process*

On the Effective Date, the Plan Administrator shall accept authority over the Plan Administration Assets as a plan administration officer pursuant to the Plan Administration Agreement, *provided*, however, that the Plan Administrator may abandon or otherwise not accept any assets that the Plan Administrator believes, in good faith, have no value to the Plan Administration Process.  Any assets the Plan Administrator so abandons or otherwise does not accept shall not vest in the Debtors or their Estates as Plan Administration Assets.  As of the Effective Date, all assets vested as Plan Administration Assets and all assets dealt with in the Plan shall be free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.

F.     *Certain Powers and Duties of the Plan Administrator*

The powers, rights, and responsibilities of the Plan Administrator shall be specified in the Plan Administration Agreement Filed as part of the Plan Supplement and shall include the Plan Administrator's authority and responsibility to: (a) receive, manage, invest, supervise, and protect the Plan Administration Assets; (b) pay taxes or other obligations incurred by the Estates after the Effective Date; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of Plan Administration Assets; (d) calculate and

implement distributions of Plan Administration Assets; (e) assert, settle and abandon Retained Defenses and Counterclaims; (f) resolve issues involving Claims and Interests, other than RBL Secured Claims, pursuant to Article IX hereof; and (g) undertake all administrative functions of the Chapter 11 Cases, including the ultimate closing of the Chapter 11 Cases.  The RBL Agent and the Requisite Lenders shall have the right to terminate and replace the Plan Administrator pursuant to the terms of the Plan Administration Agreement.  The Plan Administrator is the successor to the Debtors, the Estates, and the Debtors' rights to books and records. The Plan Administrator shall be authorized pursuant to section 554 of the Bankruptcy Code, in its sole discretion without any further notice to any party or action, order or approval of the Bankruptcy Court, to abandon, dispose of, or destroy in any commercially reasonable manner all originals or copies of any documents, books and records, including any electronic records, of the Debtors and which the Plan Administrator reasonably concludes are burdensome or of inconsequential value and benefit.

On the Effective Date, the Plan Administrator shall also have the power, right, and responsibility to conduct the Wind Down and to take possession of all books, records, and files of the Debtors and the Estates and provide for the retention and storage of such books, records, and files until such time as the Plan Administrator determines that retention of same is no longer necessary or required.  The Plan Administrator is authorized and empowered to effect the dissolution of any of the Debtors as soon as practicable after the Effective Date without the need for any company action or approval, and neither the Debtors nor the Plan Administrator shall be required to pay any taxes or fees to cause such dissolution.  On the Effective Date or as soon thereafter as is reasonably practicable, the Plan Administrator shall Wind Down the affairs of the Debtors and file final tax returns for the Debtors.

All expenses incurred by the Plan Administrator shall be the responsibility of the Estates and paid from the Wind Down Account, in accordance with and subject to the Wind Down Budget.

G.      *Authority to Assert, Settle, or Abandon Debtors' Retained Defenses and Counterclaims*

From and after the Effective Date, assertion, settlement, or abandonment of all Retained Defenses and Counterclaims shall be the sole responsibility of the Plan Administrator pursuant to the Plan, the Confirmation Order and the Plan Administration Agreement.  From and after the Effective Date, the Plan Administrator shall have exclusive rights, powers, and interests of the Estates to assert, settle, or abandon such Retained Defenses and Counterclaims as the sole representative of the Estates pursuant to section 1123(b)(3) of the Bankruptcy Code.

All Retained Defenses and Counterclaims are reserved and preserved and shall not be impacted or affected in any way by deemed consolidation of the Estates.

H.      *Cancellation of Documents*

On the later of (i) the Effective Date or (ii) the indefeasible payment or satisfaction of the DIP Claims in accordance with Article II.A.2 of this Plan, except to the extent otherwise provided in the Plan, all notes, instruments, debentures, certificates and other documents evidencing Claims and Interests in a Debtor or the Debtors including, without limitation, the

RBL Credit Facility, shall, with respect to the Debtors, be canceled and deemed rejected and/or terminated without any need for further action or approval of the Bankruptcy Court or any holder thereof or any other person or entity, *provided*, however, that any such documents shall remain in force to the extent applicable with respect to distributions of any property under the Plan, and the RBL Credit Facility shall continue in effect as necessary to preserve any rights of the RBL Agent and any predecessor thereof as against any money or property distributable to holders of RBL Claims, including any priority in respect of payment and the right to exercise any charging lien.

Except for the foregoing, the RBL Agent and its respective agents shall be relieved of all further duties and responsibilities related to the Loan Documents (as defined in the RBL Credit Agreement) and the Plan, except with respect to such other rights of the RBL Agent that, pursuant to the RBL Credit Agreement, survive the termination of the Loan Documents (as defined in the RBL Credit Agreement). Subsequent to the performance by the RBL Agent of its obligations pursuant to the Plan, the RBL Agent and its agents shall be relieved of all further duties and responsibilities related to the Loan Documents.

I.    *Filing of Monthly and Quarterly Reports and Payment of Statutory Fees*

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator. All Statutory Fees with respect to the period prior to the Effective Date shall be paid by the Debtors in Cash on the Effective Date or other required payment date. With respect to the period after the Effective Date, the Plan Administrator shall be obligated to pay quarterly Statutory Fees from the Wind Down Account to the U.S. Trustee and such obligation shall continue until such time as a particular Chapter 11 Case is closed, dismissed, or converted.

J.    *Members, Managers, and Officers of the Debtors*

Following the Confirmation Date and prior to the occurrence of the Effective Date, the then current officers and directors of each of the Debtors shall continue in their respective capacities and the Debtors shall execute such documents and take such other action as is necessary to effectuate the actions provided for in the Plan.[2]

On and after the Effective Date, the board of managers or directors of each Debtor shall be terminated and all of the officers and directors of the Debtors, to the extent they have not already done so, shall be deemed to have resigned from their respective positions with the Debtors, as applicable. The Plan Administrator shall be deemed to be the sole officer, member, and manager of each Debtor (and all limited liability company agreements and other organizational documents are deemed amended by this Plan to permit and authorize such admission and appointment), and the Plan Administrator shall serve in such capacity through the earlier of the date the applicable Debtor is dissolved in accordance with this Plan and the date that such Plan Administrator resigns, is terminated, or is otherwise unable to serve, provided that

---

[2]    NTD: Confirm whether any officers will be staying on at the Debtors post-Effective Date to provide transition services to Buyer.

any successor Plan Administrator shall serve in such capacities after the effective date of such appointment as the Plan Administrator.

K.    *Corporate Authorization*

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, directors, members, or managers of one or more of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable law of the states in which the Debtors are organized, without any requirement of further action by the unitholders, holders of any Interests, stockholders, directors, members, or managers of the Debtors.  After the Effective Date, to the extent necessary, the Plan Administrator shall have all authority to address any and all matters that would have required the approval of, and to act on behalf of, the stockholders, directors, members, or managers of one or more of the Debtors, including the winding down and dissolution of each of the Debtors.

L.    *Director and Officer Liability Insurance*

Before the Petition Date, the Debtors obtained D&O Tail Coverage for the current and former directors, officers, and managers.  After the Effective Date, all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, subject to and in accordance with the terms and conditions of such D&O Tail Coverage.

M.    *Effectuating Documents and Further Transactions*

Prior to the Effective Date, the Debtors shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan.  After the Effective Date, the Plan Administrator shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan.

N.    *Employee Benefits*

All employment, severance, retirement, and other similar employee-related agreements or arrangements in place as of the Effective Date with the Debtors' employees, as set forth in the *Motion of Debtors for Interim and Final Orders Authorizing Payment of Certain Prepetition Employee Wages, Benefits and Related Relief*, shall remain in full force and effect until the earlier of the conclusion of the Wind Down or the resignation or termination of the applicable employees.  The Debtors maintain no programs providing for retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code).

O.    *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate, or personal property transfer tax,

sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**ARTICLE VI.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.      *Treatment of Executory Contracts and Unexpired Leases*

As of the Effective Date, the Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases, unless such Executory Contract is a D&O Policy or an Insurance Contract, that (a) have not been otherwise rejected, assumed, or assumed and assigned, including in connection with any Sale, and (b) are not subject to a motion Filed by the Debtors prior to the Effective Date to assume, assume and assign, or reject on which the Bankruptcy Court has not yet ruled.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the foregoing rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

B.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases.  In particular, notwithstanding any nonbankruptcy law to the contrary, the Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors, as applicable, from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

C.      *Rejection Damages Claim*

All Claims arising from the rejection of Executory Contracts or Unexpired Leases must be Filed with the clerk of the Bankruptcy Court and served upon the Plan Administrator and counsel for the Debtors within thirty (30) days of the occurrence of the Effective Date.  Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim shall be classified as a Class 4 General Unsecured Claim and shall not be entitled to receive any distribution under the Plan.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within the time required by this section will be forever barred from assertion against the Debtors, the Estates, the property of the Debtors, or the Plan Administrator.**

*D.    Reservation of Rights*

Nothing contained in this Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of rejection, the Debtors shall have sixty (60) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

*E.    Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VII.**

**PROVISIONS GOVERNING DISTRIBUTIONS**

*A.    Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions*

1.    Timing and Calculation of Amounts to Be Distributed

Unless otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that this Plan provides for Allowed Claims in the applicable Class.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Article VII.  Except as otherwise provided herein, Holders of Claims shall not be entitled to postpetition interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

2.    Entitlement to Distributions

On and after the Effective Date, the Disbursing Agent shall be authorized (but not directed) to recognize and deal only with those Holders of Claims listed on the Debtors' books and records as of the Distribution Record Date.  Accordingly, the Disbursing Agent will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute securities, property, notices, and other documents only to those Holders of Allowed Claims who are Holders of such Claims (or participants therein) as of the close of business on the Distribution Record Date. The RBL Agent may, in its sole discretion, limit the further assignment of RBL Claims to allow for the accurate recording of the holders of RBL Secured Claims as of the Distribution Record Date with respect to the RBL Secured Claims.

B.    *Disbursing Agent*

The Plan Administrator shall be the Disbursing Agent (provided the Plan Administrator may hire professionals or consultants to assist with making disbursements or to act as the Disbursing Agent) and shall cause all distributions to be made to Holders of Claims after the Effective Date.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

To the extent the DIP Claims have not been paid or otherwise satisfied prior to the Effective Date, the DIP Agent shall be deemed to be the holder of all DIP Claims and all distributions on account of such claims shall be made to or on the behalf of the DIP Agent to be distributed to the DIP Lenders in accordance with the terms of the DIP Credit Agreement.  For purposes of the distribution on account of the RBL Claims, the RBL Agent shall (a) be deemed to be the Holder of all RBL Claims, and (b) make the Pro Rata distributions of the RBL Recovery to the RBL Lenders pursuant to the RBL Credit Agreement.  In accordance with the foregoing, the delivery of the RBL Recovery to the RBL Agent by the Disbursing Agent, including delivery of the Excess Wind Down Amount (if any) and the Excess Fee Escrow Amount (if any) shall satisfy all applicable distribution obligations under the Plan with respect to the RBL Secured Claims. All reasonable and documented fees and expenses of the RBL Agent (including the reasonable and documented fees and expenses of its counsel and agents) incurred in connection with such distributions shall be paid from the Wind Down Account.

C.    *Distributions on Account of Claims Allowed After the Effective Date*

1.    Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any other provision in the RSA or the Plan, no payments or distributions shall be made (a) for a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order and the Disputed Claim has become an Allowed Claim, or (b) to a specific holder of an Allowed Claim if such holder or its affiliates is or may be liable to the Debtors on account of a Cause of Action unless and until such Cause of Action has been settled or withdrawn or has been determined by Final Order of the Bankruptcy Court or such other court having jurisdiction over the matter, with respect to such Allowed Claim. Following any such settlement or determination in the preceding clause (b) that the holder of a Claim is liable to the Debtors on account of any Cause of Action with respect to such Allowed Claim, any such payment or distribution to such holder on account of such Allowed Claim may be offset against the liability such holder has to the Debtors.

D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Delivery of Distributions in General; De Minimis Distributions

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution.  Notwithstanding anything to the contrary contained in the Plan, the Plan Administrator shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim is less than $25.  Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than $25 shall be forever barred from asserting such Claim against the Plan Administration Assets.

2.    Undeliverable Distributions and Unclaimed Property

(a)    Failure to Claim Undeliverable Distributions

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days after the date any such undeliverable distribution as made.  After such date, all unclaimed property or interests in property shall revert to the Debtors and their Estates as Plan Administration Assets (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

(b)    Failure to Present Checks

Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the issuance of such check.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued.  Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within one hundred and eighty (180) days after the issuance of such check shall have its Claim for such un-negotiated check discharged and shall be discharged and forever barred, estopped, and enjoined from asserting any such Claim against the  Estates.  In such cases, any Cash held for payment on account of such Claims shall be Plan Administration Assets, free of any Claims of such Holder with respect thereto.  Nothing contained herein shall require the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

E.    *Compliance with Tax Requirements/Allocations*

In connection with this Plan, to the extent applicable, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting

requirements.  Notwithstanding any provision in this Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Disbursing Agent reserves the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.  The Plan Administrator may require, in the Plan Administrator's reasonable discretion and as a condition to the receipt of any distribution under the Plan, that the Holder of an Allowed Claim complete and return to the Plan Administrator the appropriate Form W-8 or Form W-9, as applicable, to each Holder.  Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution and (b) no distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the Plan Administrator for the payment and satisfaction of such withholding tax obligations.  If the Holder of a Claim fails to complete and return to the Plan Administrator the appropriate Form W-8 or Form W-9 within one hundred twenty (120) days of the request by the Plan Administrator,  then such Holder shall have its Claim forfeited and shall be forever barred, estopped, and enjoined from asserting any such Claim against the Estates.  In such cases, any Cash held for payment on account of such Claims shall be Plan Administration Assets, free of any Claims of such Holder with respect thereto.

F.    Surrender of Cancelled Instruments or Securities

As a condition precedent to receiving any distribution on account of its Allowed Claim, each Holder of a Claim shall be deemed to have surrendered the Certificates or other documentation underlying each such Claim, and all such surrendered Certificates and other documentations shall be deemed to be canceled pursuant to Article V.H hereto, except to the extent otherwise provided herein.

G.    Claims Paid or Payable by Third Parties

1.    Claims Paid by Third Parties

The Debtors or the Plan Administrator, as applicable, shall reduce a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or the Plan Administrator.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Plan Administrator on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor, such Debtor's Estate, or the Plan Administrator, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the distribution date.

2.    Claims Payable by Third Parties

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VIII.**

**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS**

A.    *Disputed Claims*

Before the Effective Date of the Plan, the Debtors shall have the sole authority to object to all Claims. After the Effective Date, the Plan Administrator shall have the sole authority to object to all Claims against the Debtors; *provided* that the Plan Administrator shall not be entitled to object to any Claim that has been expressly Allowed by Final Order or under the Plan. Except as expressly provided in any Bankruptcy Court order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), the Plan Administrator after Consummation will have and retain any and all rights and defenses the Debtors had with respect to any Claim as of the Petition Date. In the event that any objection to a Claim filed by the Debtors remains pending as of the Effective Date, the Plan Administrator shall be deemed substituted for the Debtors as the objecting party.

On and after the Effective Date, the Plan Administrator shall have the sole authority to litigate, compromise, settle, otherwise resolve, or withdraw any objections to all Claims, to compromise and settle any such Claims, and to administer and adjust the official register of Claims in the Chapter 11 Cases to reflect any such settlement or compromises, in each case without notice to or approval by the Bankruptcy Court.

B.    *Disputed Secured and Priority Claims Reserve*

The Plan Administrator shall establish a Disputed Secured and Priority Claims Reserve with Cash in an amount provided in the Wind Down Budget, which shall be administered by the Plan Administrator.  The Plan Administrator shall hold Cash in the Disputed Secured and

Priority Claims Reserve in trust for the benefit of holders of Disputed Secured and Priority Claims ultimately determined to be Allowed after the Effective Date. The Plan Administrator shall distribute such amounts as such Disputed Secured and Priority Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed Claims as of the Effective Date. After all Disputed Secured and Priority Claims have become either Allowed Secured or Priority Claims or Disallowed Secured or Priority Claims, and all required distributions to such Allowed Secured or Priority Claims have been made, the Plan Administrator shall effect a final distribution of the Cash remaining in the Disputed Secured and Priority Claims Reserve to the RBL Agent for distribution on account of the RBL Secured Claims.

C.      *Estimation of Claims*

The Plan Administrator may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Plan Administrator has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

**ARTICLE IX.**

**CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE**

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that:

1.      The Sale pursuant to the Purchase Agreement shall have been approved by the Bankruptcy Court prior to or substantially contemporaneously with Confirmation.

2.      A Confirmation Order shall be in form and substance acceptable to the Debtors, the DIP Agent, the RBL Agent, and the Requisite Lenders.

3.      The Confirmation Order shall provide that, among other things, the Debtors and the Plan Administrator, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing, and consummating the other contracts, instruments, and other agreements or documents created in connection with or described in this Plan.

4.    Unless otherwise agreed to in writing by the Requisite Lenders, as applicable, to the extent of their consent rights as provided in the RSA or this Plan, the Debtors shall not have submitted any amendment, modification, or filing seeking to amend or modify this Plan, the Disclosure Statement, or any documents, motions, or orders related to the foregoing.

5.    The RSA shall not have been terminated and shall be in full force and effect.

B.    *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following provisions, terms, and conditions are satisfied (or waived pursuant to the provisions of Article IX.C hereof), and the Effective Date shall occur on the date upon which the last of such conditions are so satisfied and/or waived.

1.    The Plan and all documents contemplated thereby, including any amendments, modifications, or supplements thereto, shall be acceptable to the Debtors, the DIP Agent, the RBL Agent, and the Requisite Lenders, as applicable, to the extent of their consent rights as provided in the Plan, and pursuant to the terms of, and in accordance with, the RSA.

2.    The Debtors shall have established and funded with Cash the Fee Escrow Account.

3.    The Debtors shall have established and funded with Cash the Wind Down Account with the Wind Down Amount in accordance with the Wind Down Budget.

4.    Cash in the amount sufficient to satisfy the DIP Claims in accordance with Article II.A.2 of this Plan shall have been delivered to the DIP Agent, for distribution to and for the benefit of the DIP Lenders in accordance with the DIP Credit Agreement.

5.    The RBL Recovery shall have been delivered to the RBL Agent, for distribution to and for the benefit of Holders of RBL Secured Claims.

6.    The reasonable and documented fees and expenses incurred by the RBL Advisor Fees invoiced to the Debtors at least two business days prior to the Effective Date have been paid in full in Cash.

7.    The Confirmation Order in form and substance acceptable to the Debtors, the DIP Agent, the RBL Agent, and the Requisite Lenders, shall have been entered and shall not have been stayed, modified, or vacated.  The Confirmation Order shall provide that, among other things, the Debtors and the Plan Administrator, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, and other agreements or documents created in connection with or described in this Plan.

8.    Any documents governing the Plan Administration Process shall have been executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof.

9.    All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

10.    The Sale shall have closed pursuant to the Purchase Agreement.

C.    *Waiver of Conditions*

Each of the conditions to Confirmation and to Consummation set forth in this <u>Article IX</u> may be waived with the consent of the Debtors and the Requisite Lenders without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate this Plan; *provided*, however, the consent of the Requisite Lenders to such waiver shall only be required as and to the extent set forth in the RSA.

D.    *Effect of Nonoccurrence of Conditions*

If the Consummation of this Plan does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders or any other Entity in any respect.

**ARTICLE X.**

**SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS**

A.    *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest, or any distribution to be made on account of such Allowed Claim or Allowed Interest.    The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable.    In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against the Estates and Causes of Action against other Entities.

B.    *Releases by the Debtors*

**As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by**

36

the Definitive Documents and the documents in the plan supplement or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Debtors and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws or otherwise that the Debtors, the Estates, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Plan, the Sale, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the treatment of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the DIP Financing, the DIP Documents, the RBL Credit Documents, the Disclosure Statement, Plan, the RSA, the Definitive Documents, and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, however, that nothing herein will be construed to release any Person from willful misconduct, gross negligence, or intentional fraud as determined by a Final Order.

C.    *Releases by Holders of Claims and Interests*

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the documents in the Plan Supplement and the obligations contemplated by the Sale, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on

or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Plan, the Sale, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the treatment of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the DIP Financing, the DIP Documents, the RBL Credit Documents, the Disclosure Statement, Plan, the RSA, the Definitive Documents, and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, however, that nothing herein will be construed to release any Person from willful misconduct, gross negligence, or intentional fraud as determined by a Final Order.

D.    *Exculpation*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the DIP Financing, the Disclosure Statement, the RSA, the Sale, and the Plan (including the Definitive Documents and the documents in the Plan Supplement), or the solicitation of votes for, or confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan, or the property to be distributed under the Plan; the purchase, sale, or rescission of the purchase or sale of any security of the Debtors; or the transactions in furtherance of any of the foregoing; other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

E.    *Non-Discharge of the Debtors; Injunction*

In accordance with section 1141(d)(3) of the Bankruptcy Code, the Plan does not discharge the Debtors. Section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. As such, no Entity holding a Claim or Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan. All parties are precluded from

asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

Except as otherwise expressly provided for in the Plan or Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities are permanently enjoined, on and after the Effective Date, on account of or in connection with any Claim or Interest or Cause of Action, from:

      a.  commencing or continuing in any manner any action or other proceeding of any kind against any of the Debtors, the Estates, or the Plan Administrator;

      b.  enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any of the Debtors, the Estates, or the Plan Administrator;

      c.  creating, perfecting or enforcing any encumbrance of any kind against any of the Debtors, the Estates, or the Plan Administrator;

      d.  asserting any right of setoff or subrogation of any kind against any obligation due from any of the Debtors, the Estates, or the Plan Administrator, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed proof of Claim; or

      e.  commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Interest or Cause of Action released under this Article X.

Such injunction shall extend to any successors and assigns of the Debtors, the Estates, or the Plan Administrator and their respective assets and properties.  Any Entity injured by any willful violation of such injunction may seek actual damages and, in appropriate circumstances, may seek punitive damages from the willful violator.

Unless otherwise provided herein, any injunction or stay arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code or otherwise that is in existence on the Confirmation Date shall remain in full force and effect until the Chapter 11 Cases are closed.

F.     *Setoffs*

Except as otherwise expressly provided for in the Plan, each Debtor and the Plan Administrator (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim or an Interest, may set off against any Allowed Claim or Allowed Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Allowed Interest (before any distribution is made on account of such Allowed Claim or Allowed Interest), any claims, rights and Causes of Action of any nature that such Debtor or the Plan Administrator,

as applicable, may hold against the Holder of such Allowed Claim or Allowed Interest, to the extent such claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor or the Plan Administrator of any such claims, rights and Causes of Action that such Debtor or the Plan Administrator may possess against such Holder.  In no event shall any Holder of Claims or Interests be entitled to set off any Claim or Interest against any claim, right or Cause of Action of the applicable Debtor or the Plan Administrator unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date.

G.    *Release of Liens*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of an Other Secured Claim, satisfaction in full of the portion of the Other Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Debtor and its successors and assigns.

H.    *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtors, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date.

**ARTICLE XI.**

**BINDING NATURE OF PLAN**

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES, OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

**ARTICLE XII.**

**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain jurisdiction over the Chapter 11

Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, and this Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

1.   allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.   decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.   resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.   ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.   adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.   adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.   adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.   enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.   resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.  issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.   resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions and other provisions contained in Article X hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.   resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VII hereof;

13.   enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, or vacated;

14.   determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.   enter an order or final decree concluding or closing the Chapter 11 Cases;

16.   adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.   hear and determine all Fee Claims;

18.   consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.   determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.   hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

21.   hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.   enforce all orders previously entered by the Bankruptcy Court; and

23.   adjudicate all other matters over with the Bankruptcy Court has jurisdiction;

*provided*, however, that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection or dispute resolution clause that refers disputes to a different court and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents.

ARTICLE XIII.

## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.    *Modifications and Amendments*

Subject to the limitations and rights contained in this Plan and the RSA:  (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify this Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, and subject to the consent of the RBL Agent and the Requisite Lenders, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

B.    *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of the Plan*

Subject to the RSA, the Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw this Plan subject to the terms hereof and the RSA, or if Confirmation or Consummation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (x) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtor or any other Entity; (y) prejudice in any manner the rights of the Debtors or any other Entity; or (z) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

D.    *Substantial Consummation of the Plan*

Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

A.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or

43

assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

B.    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.   Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests before the Effective Date.

C.    *Consent Rights*

Notwithstanding anything in the Plan to the contrary, any and all consent rights of the RBL Agent or the Requisite Lenders set forth in the RSA (irrespective of whether the RSA has been assumed by the Debtors) with respect to the form and substance of this Plan, the Plan Supplement, and any other documents contemplated under the Plan shall apply to the Plan as if stated in full herein until such time as the RSA is terminated in accordance with its terms.

D.    *Further Assurances*

For the avoidance of doubt, the Debtors and the Consenting Lenders shall not violate, and shall otherwise comply, with the RSA in all respects, including with respect to the implementation of the Plan and the Effective Date.  The Debtors, all Holders of Claims receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.

E.    *Payment of Fees and Expenses*

Prior to or as of the Effective Date, the Debtors shall promptly pay in Cash in full Cash any and all accrued but unpaid reasonable and documented RBL Advisor Fees for which the Debtors have received invoices or estimates at least two Business Days prior to the Effective Date.

F.    *Service of Documents*

Any pleading, notice, or other document required by this Plan to be served on or delivered to the Debtors or the Plan Administrator shall be sent to:

> Templar Energy LLC
> 4700 Gaillardia Pkwy, Ste 200
> Oklahoma City, OK 73142
> Attention:  Benjamin H. Harris, General Counsel
>         (Benjamin.Harris@Templar.Energy)
>
> -and-

[Plan Administrator contact information]

with copies to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Attention : Robert A. Britton
        (rbritton@paulweiss.com)
        Sarah Harnett
        (sharnett@paulweiss.com)
        Teresa Lii
        (tlii@paulweiss.com)

-and-

Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
Attention:  Pauline K. Morgan
        (pmorgan@ycst.com)
        Jaime Luton Chapman
        (jchapman@ycst.com)

G.  *Dissolution of Committee*

On the Effective Date, the Committee(s), if any, shall dissolve automatically, whereupon its members, Professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except for purposes of filing applications for Professional compensation in accordance with Article II.A.2 hereof.

H.  *Nonseverability of Plan Provisions*

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that any such alteration or interpretation must be in form and substance acceptable to the Debtors, the RBL Agent, and the Requisite Lenders; *provided, further,* that the Debtors may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and

shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (iii) nonseverable and mutually dependent.

I.      *Return of Security Deposits*

Unless the Debtors have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits provided by the Debtors to any Person or Entity at any time after the Petition Date shall be returned to the Debtors within twenty (20) days after the Effective Date, without deduction or offset of any kind.  Upon receipt, the Debtors shall transfer such funds to the RBL Agent for distribution to the RBL Lenders in accordance with the Plan.

J.      *Entire Agreement*

Except as otherwise indicated herein and except for the terms and conditions of the RSA, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

K.      *Exhibits*

All exhibits hereto are incorporated into and are a part of the Plan as if set forth in full in the Plan.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

L.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

M.      *Closing of Chapter 11 Cases*

The Plan Administrator shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases, *provided*, as of the Effective Date, the Plan Administrator may submit separate orders to the Bankruptcy Court under certification of counsel closing certain individual Chapter 11 Cases and changing the caption of the Chapter 11 Cases accordingly, provided further that matters concerning Claims may be heard and adjudicated in one of the Debtors' chapter 11 cases that remains open

regardless of whether the applicable Claim is against a Debtor in a Chapter 11 Case that is closed.  Nothing in this Plan shall authorize the closing of any case *nunc pro tunc* to a date that precedes the date any such order is entered.  Any request for *nunc pro tunc* relief shall be made on motion served on the U.S. Trustee, and the Bankruptcy Court shall rule on such request after notice and a hearing.  Upon the filing of a motion to close the last Chapter 11 Case remaining open, the Plan Administrator shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Rule 3022-1(c).

N.      *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  In the event of a conflict between any provision of the Plan and the Confirmation Order, the Confirmation Order shall govern and control.

O.      *Filing of Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

P.      *Tax Reporting and Compliance*

The Debtors shall be authorized to request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

[*Remainder of page intentionally left blank.*]

Dated: May 31, 2020

Respectfully submitted,


**TEMPLAR ENERGY LLC,**
a Delaware limited liability company,
on behalf of itself and the other Debtors


By:    */s/ Brian Simmons*
  Name: Brian A. Simmons
  Title:  CEO & President