## **EXHIBIT A**

**Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TEMPLAR ENERGY LLC, *et al.*,[1] | Case No. 20-11441 (BLS) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. ___ |

**ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF ALL
OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) APPROVING BID
PROTECTIONS, (C) SCHEDULING A SALE HEARING AND OBJECTION
DEADLINES WITH RESPECT TO THE SALE, (D) SCHEDULING AN AUCTION,
(E) APPROVING THE FORM AND MANNER OF NOTICE OF THE SALE HEARING
AND AUCTION, (F) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT
PROCEDURES, AND (G) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion") of the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors") for the entry of an order (i) approving the

bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures")[2] in connection with

the sale (the "Sale") of all or substantially all of the Debtors' assets (the "Assets"); (ii) approving

the form and manner of notice with respect to the Debtors' selection of one or more stalking horse

bidders (each a "Stalking Horse Bidder"), if any, and the provision of Bid Protections to such

Stalking Horse Bidder; (iii) scheduling the Auction and the Sale Hearing and approving the form

and manner of the notice of the Sale of the Assets, the Auction, and the Sale Hearing, the form of

which notice is attached hereto as **Exhibit 2** (the "Sale Notice"); (iv) establishing procedures for

the assumption and assignment of executory contracts and unexpired leases (the "Contracts")

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Templar Energy LLC (4719), TE Holdcorp, LLC (6730), TE Holdings, LLC (3115), TE Holdings II, LLC (N/A), Templar Operating LLC (0810), Templar Midstream LLC (3275), and TE Holdings Management LLC (7467).  The address of the Debtors' corporate headquarters is 4700 Gaillardia Parkway, Suite 200, Oklahoma City, Oklahoma 73142.

[2]   Capitalized terms used but not otherwise defined herein are to be given the meanings ascribed to them in the Motion or the Bidding Procedures.

and approving the form and manner of the notice of assumption and assignment of executory contracts and unexpired leases, including the form and manner of notice of proposed cure amounts, the form of which notice is attached hereto as **Exhibit 3** (the "Cure Notice"); and (v) granting related relief; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and this Court having found that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given except as set forth herein with respect to the Auction, the Sale Hearing, and the potential assumption and assignment of Contracts; and a reasonable opportunity to object to or be heard regarding the relief provided herein has been afforded to parties-in-interest pursuant to Bankruptcy Rule 6004(a); and this Court having considered the First Day Declaration and the other evidence adduced in support of entry of this Order; and upon the record of the hearing and all of the proceedings had before this Court; and this Court having found that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and this Court having found that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.      The statutory bases of the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006 and Local Rule 6004-1.

B.      The Bidding Procedures, in the form attached hereto as **Exhibit 1**, are fair, reasonable, and appropriate, and are designed to maximize the value to be achieved from the Sale.

C.      The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

D.      The Assignment Procedures provided for herein are fair, reasonable, and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code.

E.      The Debtors have articulated good and sufficient business reasons for this Court to approve (i) the Bidding Procedures, including the procedures for selecting one or more Stalking Horse Bidders, the scheduling of bid deadlines, auction, and sale hearing with respect to the proposed Sale and the form and manner of notices related thereto; (ii) the establishment of procedures to assume and assign the Contracts and fix the Cure Amounts and the form and manner of notices related thereto; and (iii) the Debtors' entry into one or more Stalking Horse APAs with one or more Stalking Horse Bidders, subject to higher or otherwise better offers as set forth in the Bidding Procedures; and (iv) the Debtors' agreement to pay any Expense Reimbursement and any Break-Up Fee and the protections afforded to any Expense Reimbursement and any Break-Up Fee pursuant to the Bankruptcy Code.

---

[3]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

26578260.1

F.      The Bidding Procedures are: (i) fair, reasonable, and appropriate; (ii) designed to maximize recovery with respect to the Sale; and (iii) comply with the requirements of Local Rule 6004-1(c).

G.      The process for filing a notice (the "Stalking Horse Notice") including (a) the identification of the Stalking Horse Bidder; (b) a copy of the Stalking Horse APA; (c) the aggregate purchase price provided in the Stalking Horse APA (the "Stalking Horse Purchase Price"); (d) the deposit paid by the Stalking Horse Bidder; and (e) the amount of any Break-Up Fee or any Expense Reimbursement, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the designation of any Stalking Horse Bidder and Stalking Horse APA. No other or further notice is required of the foregoing.

H.      The form and manner of service of the Sale Notice, and the Debtors' proposed publication of the Sale Notice, as may be modified for publication (the "Publication Notice"), as proposed in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale, the Bidding Procedures, and the Assignment Procedures to be employed in connection therewith, including, without limitation: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures and the dates and deadlines related thereto; (iii) the objection deadline for the Sale and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Assets; and (v) representations describing the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the proceeds of the Sale; and no other or further notice of the Sale shall be required.

I.      The Cure Notice is appropriate and reasonably calculated to provide each non-debtor party to any Contracts (such parties, collectively, the "Non-Debtor Counterparties") with

proper notice of the potential assumption and assignment of the applicable Contract, the proposed Cure Amount, and the Assignment Procedures.  The inclusion of any particular contract or lease on a Cure Notice or Supplemental Cure Notice (as defined below) shall not be deemed to be an admission that such contract or lease is an executory contract or unexpired lease of property or require or guarantee that such contract or lease will be assumed and/or assigned, and all rights of the Debtors with respect to the foregoing are reserved.

J.      As evidenced by the affidavit(s) of service previously filed with this Court [Docket Nos. [●]], the Debtors served the Sale Notice on [●], 2020 upon (a) all entities known to have expressed a *bona fide* interest in a transaction with respect to the Assets within the past two years; (b) all entities known to have asserted any lien, claim or encumbrance in or upon any of the Assets; (c) all federal, state and local environmental, regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (d) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Successful Bidder; (e) all known creditors of the Debtors; (f) the Office of the United States Trustee for the District of Delaware; (g) the Internal Revenue Service; (h) the Securities & Exchange Commission; (i) the Office of the United States Attorney for the District of Delaware; (j) all persons and entities that have filed a request for service of filings in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002; and (k) the Notice Parties (collectively, the "Sale Notice Parties").

K.      No further notice beyond that described in the foregoing paragraphs is required in connection with the Sale.

L.      The entry of this order (this "Order" or the "Bidding Procedures Order") is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

26578260.1

5

**IT IS HEREBY ORDERED THAT**:

1.       The Motion is granted as set forth herein.

2.       All objections to the Motion or the relief provided herein, as they pertain to the entry of this Order, that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits.

## The Bidding Procedures

3.       The Bidding Procedures are incorporated herein and approved, and shall apply with respect to the Sale.  The Debtors are authorized to take all actions reasonable and necessary or appropriate to implement the Bidding Procedures.

4.       The Debtors are authorized to conduct the process for soliciting bids for the Sale, responding to Qualified Bids, conducting the Auction, and designating one or more Successful Bids, Successful Bidders, Backup Bids, and Backup Bidders, all in accordance with the Bidding Procedures.

5.       Potential Bidders or Qualified Bidders (other than the Stalking Horse Bidder, if any, and solely to the extent set forth in the Stalking Horse APA) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.  For the avoidance of doubt, no Qualified Bidder (other than the Stalking Horse Bidder, if any, and solely to the extent set forth in the Stalking Horse APA) will be permitted to request at any time, whether as part of the Auction, if any, or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

26578260.1

6. For all purposes under the Bidding Procedures: (a) any designated Stalking Horse Purchaser will be considered a Qualified Bidder, and any Stalking Horse APA will be considered a Qualified Bid; (b) should it decide to credit bid, the Agents, in their respective capacities as such, are Qualified Bidders and any such credit bid will be considered a Qualified Bid; and (c) in determining whether the Potential Bidders constitute Qualified Bidders, the Debtors may consider a combination of bids for the Assets.

**Assignment Procedures**

7. The following Assignment Procedures shall govern the assumption and assignment of the Contracts in connection with the Sale, and any objections related thereto:

a. No later than 21 days before the Sale Hearing, the Debtors shall file with this Court and serve the Cure Notice on each Non-Debtor Counterparty to each of the Contracts.

b. The Cure Notice served on each Non-Debtor Counterparty shall (i) identify each Contract; (ii) list the Cure Amount the Debtors believe is required to be paid pursuant to the Bankruptcy Code in order to effectuate the assignment of the Contract; (iii) include a statement that the assumption and assignment of such Contract is neither required nor guaranteed; and (iv) inform such Non-Debtor Counterparty of the requirement to file any Cure/Assignment Objections (defined below) by the Cure/Assignment Objection Deadline (defined below). Service of a Cure Notice does not (x) constitute, and shall not be deemed, an admission that a particular Contract is an executory contract or unexpired lease of property, or (y) confirm that the Debtors are required to assume and/or assign such Contract.

c. Objections (a "Cure/Assignment Objection"), if any, to one or more of (i) a scheduled Cure Amount, (ii) the ability of the Stalking Horse Bidder, if any, to provide adequate assurance of future performance, and (iii) the proposed assumption, assignment and/or transfer of such Contract (including the transfer of any related rights or benefits thereunder), other than objections that relate specifically to the proposed from of adequate assurance of future performance of any Successful Bidder (other than the Stalking Horse Bidder), must (x) be in writing; (y) state with specificity the nature of such objection, including the amount of Cure Amount in dispute; and (z) be filed with this Court and properly served on the Notice Parties (as defined below) so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) days after service of the Cure Notice (the "Cure/Assignment Objection Deadline").

26578260.1

d.  The Debtors may (i) supplement the list of Contracts set forth in the Cure Notice in the event that the Debtors identify any additional Contracts and (ii) modify the previously stated Cure Cost associated with respect to any Contract; *provided*, that the Debtors shall promptly serve a supplemental Cure Notice (each, a "Supplemental Cure Notice") by hand delivery or overnight mail on the Non-Debtor Counterparty. Each Supplemental Cure Notice will include the same type of information with respect to the listed Contracts as was included in the Cure Notice with the Cure/Assignment Objection Deadline for any Non-Debtor Counterparty listed on such Supplemental Cure Notice to file a Cure/Assignment Objection being fourteen (14) from the date of service of such Supplemental Cure Notice.

e.  If the Successful Bidder is a party other than the Stalking Horse Bidder, objections to the proposed form of adequate assurance of future performance must be filed with the Court and served on the Notice Parties by the later of (i) the Post-Auction Objection Deadline and (ii) the Cure/Assignment Objection Deadline.

f.  Any Non-Debtor Counterparty that fails to timely object as provided herein will: (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Contract in the event it is assumed and/or assigned by the Debtors, and the Debtors and the assignee of the Contract shall be entitled to rely solely upon the Cure Amounts scheduled on the Cure Notice or Supplemental Cure Notice, as applicable; and (ii) be deemed to have consented to the assumption, assignment and/or transfer of such Contract (including the transfer of any related rights and benefits thereunder) to the relevant assignee and shall be forever barred and estopped from asserting or claiming against the Debtors or the assignee that any additional pre-assignment amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied under such Contract, that any related right or benefit under such Contract cannot or will not be available to the relevant assignee, or that the assignee failed to provide such Non-Debtor Counterparty with adequate assurance of future performance.

g.  If a Non-Debtor Counterparty files an objection satisfying the requirements of these Assignment Procedures that is not consensually resolved by the Sale Hearing, such unresolved objection will be considered at the Sale Hearing, *provided*, *however*, that any Contract that is the subject of a Cure/Assignment Objection with respect solely to the amount of the Cure Amount may be assumed and assigned prior to resolution of such objection, so long as the Debtors or assignee, as applicable, (i) pay any undisputed Cure Amount on or before the date designated for consummating the Sale under Stalking Horse APA or the purchase agreement of the Successful Bidder, as applicable and (ii) appropriately reserve funding for the disputed portion of the Cure Amount pending resolution of the dispute.

h.  The Debtors' assumption and/or assignment of a Contract is subject to approval by this Court and consummation of the Sale. Absent entry of a Sale Order approving the assumption and/or assignment of the Contracts and consummation of the Sale,

the Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

### Notice Procedures

8.    The form of Sale Notice in the form attached hereto as **Exhibit 2** is approved.

9.    On or before two (2) business days after entry of this Order, the Debtors, will cause the Bidding Procedures Order to be sent to the Sale Notice Parties by first-class mail, to the extent the Sale Notice has not previously been sent to the Sale Notice Parties.  The Debtors will also post the Sale Notice and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent, Kurtzman Carson Consultants LLC ("KCC"), www.kccllc.net/TemplarEnergy.

10.    In addition to the foregoing, at least 21 days before the Sale Hearing, the Debtors shall, subject to applicable submission deadlines, publish the Publication Notice once in *The Oklahoman, PLS, Inc.* and *Hart Energy*.

11.    Service of the Sale Notice as described above in Paragraph J shall be sufficient and proper notice of the Sale with respect to known interested parties.

12.    No other or further notice of the sale of the Assets, the Auction, the Sale Hearing, or the Sale Objection Deadline shall be required.  Service and publication of the Sale Notice as set forth herein is deemed to satisfy the notice requirements under Bankruptcy Rules 2002, 6004, and 6006, as well as Local Rule 6004-1, and to otherwise comply in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

13.    As soon as reasonably practicable following the conclusion of the Auction, the Debtors shall file on this Court's docket and post on the website of the Debtors' claims and noticing agent for the Chapter 11 Cases a notice identifying the Successful Bidder(s) and any applicable Backup Bidder(s).

26578260.1

14.     The form of Cure Notice and the Assignment Procedures set forth herein are approved and are deemed to be sufficient to provide effective notice to the Non-Debtor Counterparties of the Debtors' intent to potentially assume and assign some or all of the Contracts and the Debtors' proposed Cure Amounts.  Such notice is deemed to satisfy the notice requirements under Bankruptcy Rules 2002, 6004, and 6006, as well as Local Rule 6004-1, and to otherwise comply in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

### Stalking Horse Bidder and Related Bid Protections

15.     In accordance with the Bidding Procedures, the Debtors may, with the consent (such consent not to be unreasonably withheld) of the RBL Agent, the DIP Agent and the Majority Lenders (as defined in any order approving the DIP Facility), enter into a Stalking Horse APA(s), subject to higher or otherwise better offers at the Auction, with any Stalking Horse Bidder(s) on or before June 26, 2020, or as such date may be extended in accordance with the Bidding Procedures (the "Stalking Horse Deadline").

16.     In the event that the Debtors enter into a Stalking Horse APA on or prior to the Stalking Horse Deadline, the Debtors shall file with the Court and serve on the Sale Notice Parties the Stalking Horse Notice.  If the Stalking Horse APA satisfies the following conditions, (a) the Break-Up Fee does not exceed 3.0% of the aggregate Stalking Horse Purchase Price; (b) the Expense Reimbursement does not exceed $750,000; (c) the Consultation Parties have provided their consent to the stalking horse designation; and (d) the Stalking Horse Bidder is not an insider (as defined in section 101(31) of the Bankruptcy Code), the Debtors may submit an order under certification of counsel approving the designation of the Stalking Horse Bidder and Stalking Horse APA as a stalking horse without the need for further hearing.  If a Stalking Horse Bidder and

Stalking Horse APA are designated that do not satisfy each of the conditions (a) through (d) in the prior sentence, the Court shall hold a hearing to consider approval of the designation of the Stalking Horse Bidder and Stalking Horse APA as a stalking horse to be held on the first date the Court is available that is at least five (5) business days after filing the applicable Stalking Horse Notice, with objections due at 4:00 p.m. the day prior to such hearing.

17.     Upon the entry of an order approving the designation of the Stalking Horse Bidders(s), the obligation of the Debtors to pay the Bid Protection shall constitute allowed administrative expense claims against the Debtors' estate under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.  In such case, the Bid Protections shall be payable by the Debtors to any Stalking Horse Purchaser on the terms and conditions of the Stalking Horse APA.

### Auction and Sale Hearing

18.     **Bid Deadline**.  As further described in the Bidding Procedures, the deadline for Potential Bidders to submit bids (the "Bid Deadline") shall be **July 6, 2020 at 5:00 p.m. (ET)**.  No bid shall be deemed to be a Qualified Bid unless such bid meets the requirements set forth in the Bidding Procedures, in consultation with the Consultation Parties.

19.     **Auction; Cancellation of Auction**.  Depending on the Bids received in accordance with the Bidding Procedures, the Debtors may conduct an Auction for the sale of the Assets.  If at least one Qualified Bid is received in accordance with the Bidding Procedures with regard to the Assets, the Debtors shall be permitted to hold the Auction in accordance with the Bidding Procedures, which Auction shall take place on **July 9, 2020 at 10:00 a.m.** (prevailing Eastern Time) at the offices of counsel to the Debtors, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, or such later time or such other place, including by telephone or video conference, as the Debtors shall designate.  In the event the

Debtors designate a later time or place for the Auction, they shall (i) notify all Qualified Bidders (as defined in the Bidding Procedures) who have submitted Qualified Bids, and (ii) file notice of such change with this Court.

20.     If no Qualified Bids other than any Stalking Horse Bid are received in accordance with the Bidding Procedures, then the Debtors may cancel the Auction, and may decide, in the Debtors' reasonable business judgment in consultation with the Consultation Parties, to designate the Stalking Horse Bid as the Successful Bid and pursue entry of the order approving a Sale of the Assets to the Stalking Horse Bidder pursuant to the Stalking Horse APA.

21.     If the Auction is cancelled, the Debtors shall promptly file a notice of cancellation of the Auction and designation of the Stalking Horse Bid as the Successful Bid.

22.     Each Qualified Bidder participating in the Auction will be required to confirm on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Procedures and the Auction, (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder or Backup Bidder, and (c) the Qualified Bidder agrees to serve as the Backup Bidder if its Qualified Bid is the next highest or otherwise best bid after the Successful Bid.

23.     If the initial Successful Bid is not consummated, the Debtors shall file a notice with the Court designating the Backup Bid as the Successful Bid, and such Backup Bid shall be deemed the Successful Bid for all purposes.  The Debtors will be authorized to consummate all transactions contemplated by the Backup Bid without further order of the Bankruptcy Court or further notice to any party.

24.     **Sale Hearing**.  The Sale Hearing shall be held before this Court on **July 14, 2020 at 10:30 a.m. (prevailing Eastern Time)**.  At the Sale Hearing, the Debtors will seek the entry of

a Sale Order approving and authorizing the Sale to the Successful Bidder(s).  The Sale Hearing (or any portion thereof) may be adjourned by this Court or the Debtors from time to time without further notice other than by announcement in open court or through the filing of a notice or other document on this Court's docket.

25.    **Sale Objection Deadline**. The deadline to object to the relief requested in the Motion, including entry of the proposed Sale Order (a "<u>Sale Objection</u>") is July 7, 2020 at 4:00 p.m. (prevailing Eastern Time) (the "<u>Sale Objection Deadline</u>").  A Sale Objection must be filed with this Court and served in the manner set forth below so as to be *actually received* no later than the Sale Objection Deadline.

26.    **Post-Auction Objection Deadline**.  The deadline to object only to (i) the conduct at the Auction (if held) and (ii) the specific identity of and adequate assurance of future performance provided by the Successful Bidder (only if such Successful Bidder is not the Stalking Horse Bidder) (such a limited objection, a "<u>Post-Auction Objection</u>") is 12:00 p.m. (prevailing Eastern Time) on the date that is one Business Day prior to the date initially scheduled for the commencement of the Sale Hearing (the "<u>Post-Auction Objection Deadline</u>").  A Post-Auction Objection must be filed with this Court and served in the manner set forth below so *actually received* no later than the Post-Auction Objection Deadline.

**Objection Procedures**

27.    Any party that seeks to object to the relief requested in the Motion or the relief granted herein, or to any actions taken in accordance herewith, shall file a formal written objection that complies with the objection procedures set forth herein.

28.    Objections, if any, must be: (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the applicable provisions of the Bankruptcy Rules and

the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (v) be filed with this Court; and (vi) served on the following parties (the "Notice Parties"): (a) proposed counsel for the Debtors, (1) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Paul M. Basta, Robert A. Britton, Sarah Harnett, and Teresa Lii (emails: pbasta@paulweiss.com; rbritton@paulweiss.com; sharnett@paulweiss.com; and tlii@paulweiss.com)), and (2) Young Conaway Stargatt and Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801 (Attn: Pauline K. Morgan, Jaime Luton Chapman, and Tara C. Pakrouh (emails: pmorgan@ycst.com and jchapman@ycst.com, and tpakrouh@ycst.com) )); (b) the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware, 19801 (Attn: Jane M. Leamy (email: jane.m.leamy@usdoj.gov)); (c) counsel to the DIP Agent and RBL Agent (i) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA 02110 (Attn: Amy L. Kyle and Andrew J. Gallo (email: amy.kyle@morganlewis.com and andrew.gallo@morganlewis.com)) and (ii) Richards, Layton & Finger, P.A, One Rodney Square 920 North King Street Wilmington, DE 19801 (Attn: Mark D. Collins (emails: collins@rlf.com)); (d) counsel to any statutory committee appointed in these Chapter 11 Cases, in each case so as to be received no later than the Cure/Assignment Objection Deadline, Sale Objection Deadline, or Post-Auction Objection Deadline, as applicable.

29.     Failure to file a Sale Objection on or before the Sale Objection Deadline (a) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and/or to the consummation and performance of the Sale with a Successful Bidder, and (b) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto free and clear of any interest in the Assets.

## OTHER RELIEF GRANTED

30.     Any Sale Transaction Fee[4] due to Guggenheim Securities as a result of the closing of any Sale Transaction shall be segregated and escrowed (for the exclusive benefit of Guggenheim Securities) from the proceeds of such Sale Transaction, as an express carve-out from the collateral of the Debtors' pre- and postpetition secured lenders, prior to any other use or distribution of such proceeds.  If any Sale Transaction is the result of a Successful Bid without a cash component sufficient to pay the corresponding Sale Transaction Fee due to Guggenheim Securities in full, then any resulting unpaid portion of the Sale Transaction Fee due to Guggenheim Securities shall be segregated and escrowed (for the exclusive benefit of Guggenheim Securities) at the closing of such Sale Transaction from the available cash of the Debtors, as an express carve-out from the collateral of the Debtors' pre- and postpetition secured lenders; *provided* that if the Debtors do not have sufficient cash to pay the unpaid portion of such Sale Transaction Fee in full, or any portion thereof, then the Successful Bidder shall immediately segregate and escrow (for the exclusive benefit of Guggenheim Securities) such unpaid portion of the Sale Transaction Fee at the closing of such Sale Transaction.  For the avoidance of doubt, nothing in this Order shall prohibit or be construed to prohibit the use of any unencumbered Assets of the Debtors or the proceeds thereof to pay any Sale Transaction Fee of Guggenheim Securities or the assertion or allowance of an administrative priority claim under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, if applicable, on account of any Sale Transaction Fee of Guggenheim Securities.  For the further avoidance of doubt, notwithstanding any other provision in this paragraph or in this Order, any Sale Transaction Fee due and payable to Guggenheim Securities is subject to the retention

---

[4]     Capitalized terms used in this paragraph and not otherwise defined herein shall have the meanings ascribed to such terms in that certain engagement letter between Guggenheim Securities, LLC ("Guggenheim Securities") and the Debtors, dated as of October 15, 2019, as amended, a copy of which is being filed in connection with the Debtors' application to retain Guggenheim Securities.

application of Guggenheim Securities and any such Sale Transaction Fee being approved by the Court.

31.     Absent a subsequent order of this Court to the contrary, this Order shall be binding in all respects upon any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy cases or upon a conversion to chapter 7 under the Bankruptcy Code.

32.     Nothing herein shall be deemed to or constitute the assumption, assignment or rejection of any executory contract or unexpired lease.

33.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be effective immediately and enforceable upon its entry.

34.     In the event of any conflict between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

35.     The requirements set forth in Local Rules 6004-1, 9006-1, and 9013-1 are hereby satisfied or waived.

36.     This Court shall retain exclusive jurisdiction over any matters related to or arising from the implementation of this Order.

26578260.1

## **EXHIBIT 1**

**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TEMPLAR ENERGY LLC, *et al.*,[1] | Case No. 20-11441 (BLS) |
| Debtors. | (Jointly Administered) |

## BIDDING PROCEDURES FOR THE SALE OF ALL OR
## SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

On [●], 2020, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered the *Order (A) Approving Bidding Procedures for the Sale of all or Substantially all of the Debtors' Assets, (B) Approving Bid Protections, (C) Scheduling a Sale Hearing and Objection Deadlines with respect to the Sale, (D) Scheduling an Auction, (E) Approving the Form and Manner of Notice of the Sale Hearing and Auction, (F) Approving Contract Assumption and Assignment Procedures, and (G) Granting Related Relief* [Docket No. __] (the "Bidding Procedures Order"), by which the Bankruptcy Court approved the procedures set forth herein (the "Bidding Procedures") with respect to the Debtors and their assets.[2]

## I.    OVERVIEW

These Bidding Procedures set forth the process by which the Debtors are authorized, in consultation with the Consultation Parties (as defined herein), to conduct an auction (the "Auction"), if any, for the sale (the "Sale") of all or substantially all of the Debtors' assets (the "Assets") to one or more potential stalking horse purchasers (each, a "Stalking Horse Bidder") or, absent a Stalking Horse Bidder or in the event the Stalking Horse Bidder is not the Successful Bidder, then to the Successful Bidder(s) (as defined below), pursuant to an asset purchase agreement (the "APA"), with the Stalking Horse Purchaser or Successful Bidder, as applicable. An initial form of the APA is available in the electronic data room established by the Debtors in connection with the Sale process.

The Company will consider bids (a "Bid") for all or substantially all of the Debtors' Assets. To the extent that these Bidding Procedures require the Debtors to consult with any Consultation Party in connection with making a determination or taking any action, or in connection with any other

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Templar Energy LLC (4719), TE Holdcorp, LLC (6730), TE Holdings, LLC (3115), TE Holdings II, LLC (N/A), Templar Operating LLC (0810), Templar Midstream LLC (3275), and TE Holdings Management LLC (7467).  The address of the Debtors' corporate headquarters is 4700 Gaillardia Parkway, Suite 200, Oklahoma City, Oklahoma 73142.

[2]    All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

matter related to these Bidding Procedures or at the Auction, if any, the Debtors shall do so in a regular and timely manner prior to making such determination or taking any such action.

## II.      THE STALKING HORSE BID

Pursuant to the Bidding Procedures Order, the Debtors, with the consent (such consent not to be unreasonably withheld) of the DIP Agent, the Majority Lenders (as defined in any order approving the DIP Facility) and the RBL Agent, are authorized to enter into an asset purchase agreement (the form of which is provided in the Debtors' data room) with one or more Stalking Horse Purchasers, as applicable, (each, a "Stalking Horse APA") not later than June 26, 2020 (as such date may be extended in accordance with these Bidding Procedures, the "Stalking Horse Deadline").  In the event the Debtors enter into any Stalking Horse APA, the Debtors will promptly file with the Court and serve on the Sale Notice Parties (as defined in the Bidding Procedures Order) a notice that includes the following: (a) the identification of the Stalking Horse Purchaser; (b) a copy of the Stalking Horse APA; (c) the purchase price provided for in the Stalking Horse APA (the "Stalking Horse Purchase Price"); (d) the deposit paid by the Stalking Horse Purchaser; and (e) the amount of any Break-Up Fee or any Expense Reimbursement (the "Stalking Horse Notice").

As provided in the Bidding Procedures Order, on or before the Stalking Horse Deadline, the Debtors may agree to grant a Break-Up Fee and Expense Reimbursement.  In accordance with the Bidding Procedures Order, upon the filing of the Stalking Horse Notice and approval of the designation of the Stalking Horse Bidder, such bid protections shall be authorized, granted and in full force and effect in favor of the Stalking Horse Purchaser, on the terms and conditions of the Stalking Horse APA.

## III.     KEY DATES

These Bidding Procedures provide interested parties with the opportunity to qualify for and participate in the Auction to be conducted by the Debtors and to submit competing bids for the Assets.  The Debtors shall assist interested parties in conducting their respective due diligence investigations and shall accept Bids until **July 6, 2020 at 5:00 p.m. (prevailing Eastern time)** (the "Bid Deadline").

The key dates for the sale process are as follows:[3]

| | |
|---|---|
| **June 26**, 2020 | Deadline to Select Stalking Horse Bidder(s) |
| **July 6**, 2020 at 5:00 p.m. (prevailing Eastern time) | Bid Deadline - Due Date for Bids and Deposits |
| **July 7**, 2020 (prevailing Eastern time) | Debtors to determine which Bids are Qualified Bids and notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder |

---

[3]    These dates are subject to extension or adjournment.

26578260.1

| | |
|---|---|
| **July 9**, 2020 at 10:00 a.m. (prevailing Eastern time) | Auction (if any), which will be held at Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 or such later date and time or location, including by telephone or video conference, as selected by the Debtors, after consultation with the Consultation Parties, and timely communicated to all entities entitled to attend the Auction. |
| **July 14**, 2020 at 10:30 a.m. (prevailing Eastern time) (pending the Bankruptcy Court's availability) | Sale Hearing, which will be held at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 6th Floor, Wilmington, Delaware 19801 |

## IV.   BIDDING PROCESS

### A.   Submissions to the Debtors

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer for the Assets. The Debtors, in consultation with their advisors and the Consultation Parties, may consider any Bid (including, among other possibilities, multiple Bids submitted by the same bidder or one or more Bids submitted by a consortium acting as a single bidder).

### B.   Potential Bidders

To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, an entity interested in consummating a Sale must deliver or have previously delivered the following to the Debtors (any such entity, a "Potential Bidder"):

(a)     an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement") to the extent not already executed;

(b)     (x) evidence of such entity's financial capability to acquire the applicable Assets, the adequacy of which will be assessed by the Debtors (with the assistance of their advisors) or (y) if such entity has been formed for the purpose of acquiring some or all of the Assets, (I) a written commitment from such entity's equity holder(s), sponsor(s), or other financial backer(s) ("Bid Sponsor") to be responsible for such entity's obligations in connection with participating in the bidding process and acquiring the applicable Assets and (II) evidence of the Bid Sponsor's financial capability to acquire the applicable Assets, the adequacy of which will be assessed by the Debtors (with the assistance of their advisors); and

(c)    any other evidence the Debtors, in consultation with the Consultation Parties, may reasonably request to evaluate the entity's fitness to participate in the bidding process or ability to timely acquire the Assets.

## C.    Due Diligence

Only Potential Bidders shall be eligible to receive due diligence information and access to the Debtors' electronic data room and to additional non-public information regarding the Debtors. **No Potential Bidder will be permitted to conduct any due diligence that includes confidential information without entering into a Confidentiality Agreement with the Debtors.** The Debtors will provide to each Potential Bidder that satisfies the foregoing commercially reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post all written due diligence provided to any Potential Bidder to the Debtors' electronic data room. For all Potential Bidders, the due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

The Debtors shall not furnish any confidential information relating to the Assets, liabilities of the Debtors, or the Sale to any person or entity except to a Potential Bidder or to such Potential Bidder's duly authorized representatives to the extent provided in the applicable Confidentiality Agreement. The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided* that the Debtors may decline to provide (or elect to withdraw access to) due diligence information to any Potential Bidder who, at such time and in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, has not established (or there is otherwise a reasonable basis to doubt), that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale.

The Debtors also reserve the right, in consultation with the Consultation Parties, to withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Potential Bidder that the Debtors determine is (or is affiliated with) a competitor or supplier of the Debtors, or is otherwise an entity to which the disclosure of sensitive or competitive information, in the Debtors' exercise of their reasonable business judgment (in consultation with their advisors), may risk unduly placing the Debtors at a competitive disadvantage or subject them to regulatory scrutiny. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any entity that is not determined to be a Potential Bidder.

**All due diligence requests must be directed to** (i) Guggenheim Securities, LLC, 1301 McKinney Street, Suite 3100, Houston, Texas 77010, Attn: Abe Sameei (Abe.Sameei@guggenheimpartners.com) and (ii) Alvarez & Marsal, 2100 Ross Avenue, 21st Floor, Dallas, Texas 75201, Attn: Ed Mosley (emosley@alvarezandmarsal.com) and Steve Coverick (scoverick@alvarezandmarsal.com). The Debtors and their advisors, representatives and agents are not responsible for, and will bear no liability with respect to, any information obtained by any Potential Bidder.

26578260.1

4

1.      <u>Communications with Potential Bidders</u>

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive communications related to Bids, the Sale, or any transaction relating to the Debtors between or amongst Potential Bidders shall be conducted exclusively through the Debtors and the Debtors' advisors. **Communications between and amongst Potential Bidders is expressly prohibited unless the Debtors expressly consent in writing to such communication; *provided* that if such consent is given a representative of the Debtors shall be present for or party to any such communications (unless otherwise agreed by the Debtors in their sole discretion).**

2.      <u>Due Diligence of Potential Bidders</u>

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors, regarding qualification as a Potential Bidder or Qualified Bidder, the terms of the Potential Bidder's Bid, or the ability of the Potential Bidder to acquire the Assets. Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Consultation Parties, to determine that such bidder is no longer a Potential Bidder or that any bid made by such Potential Bidder is not a Qualified Bid (a "<u>Non-Qualifying Bid</u>").

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with these Chapter 11 Cases, in each case in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable confidentiality agreement, the Debtors and the Debtors' advisors may disclose confidential information: (i) with the prior written consent of such Potential Bidder; (ii) to the applicable Potential Bidder; (iii) in accordance with these Bidding Procedures, including to any Consultation Party; and (iv) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular Potential Bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

The Debtors encourage all Potential Bidders interested in submitting a Bid to promptly notify the Debtors and their advisors of such interest.

Notwithstanding anything herein to the contrary, all consultation, notification or other rights herein (including those of Consultation Parties) are subject to, and expressly qualified by, any confidentiality obligation or agreement entered into with any potential bidder prior to the commencement of these Chapter 11 Cases.

**D.      Qualified Bidders**

1.      A "<u>Qualified Bidder</u>" is a Potential Bidder (i) that demonstrates the financial capability to consummate the Sale (as determined by the Debtors in consultation with the Consultation Parties), (ii) whose Bid is a Qualified Bid, and (iii) that the Debtors, in consultation with the Consultation Parties, determine should be considered a Qualified Bidder. Within one business day after the Bid Deadline, the Debtors' advisors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder. The Stalking Horse Bidder shall be deemed a Qualified Bidder for all purposes under these Bidding Procedures and at all times.

2.      If any Potential Bidder is determined by the Debtors, in consultation with the Consultation Parties, not to be a Qualified Bidder, the Debtors will refund such Potential Bidder's Deposit and all accumulated interest thereon within five (5) business days after the Bid Deadline.

3.      For the avoidance of doubt, the Debtors, in consultation with the Consultation Parties, expressly reserve the right to notify a Potential Bidder that its bid is a Non-Qualifying Bid and permit such Potential Bidder to revise or supplement a Non-Qualifying Bid to make it a Qualified Bid.

4.      Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, if any, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Except as otherwise set forth in the Stalking Horse APA, without the written consent of the Debtors, in consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction, if any, as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures, and the Debtors expressly reserve the right to request additional diligence information and assurances necessary to assess and ensure continued compliance (including additional information, assurances, or commitments regarding the applicable Qualified Bidder's financial capability to consummate the transactions contemplated by such improved Qualified Bid).

**E.      Bid Requirements**

A Bid by a Potential Bidder that is submitted in writing and satisfies each of the following requirements (the "<u>Bid Requirements</u>"), as determined by the Debtors, in their reasonable business judgment and after consultation with the Consultation Parties, shall constitute a "<u>Qualified Bid</u>". In the case of a bid designated as the Stalking Horse Bid, the Stalking Horse Bid shall be deemed a Qualified Bid for all purposes under these Bidding Procedures and at all times.

1.      Assets.  Each Bid must clearly state which of the Assets that the Qualified Bidder is agreeing to purchase and assume.

2.      Assumption of Liabilities.  Each Bid must clearly state which liabilities of the Debtors the Qualified Bidder is agreeing to assume.

3.      Purchase Price.  Each Bid must clearly set forth the aggregate purchase price to be paid for the Assets, including and identifying separately any cash and non-cash components, which non-cash components shall be limited only to credit-bids and assumed liabilities (the "Aggregate Purchase Price").

4.      Minimum Bid.  At a minimum, each Bid must have an Aggregate Purchase Price that in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, has a monetary value equal to or greater than the Aggregate Acquisition Consideration, plus the Expense Reimbursement and the Termination Fee (each as defined in the Stalking Horse APA), plus $500,000 in cash or cash equivalents (the "Bid Threshold").

5.      Markup of the APA.  Each Bid must be accompanied by a duly authorized and executed ("Proposed APA"), an electronic copy of such Proposed APA in Microsoft Word format, and a redline of such Proposed APA marked to reflect the amendments and modifications made to the form of APA or, if the Debtors have selected a Stalking Horse Bidder, the Stalking Horse APA.  If the Debtors have selected a Stalking Horse Bidder, each such Proposed APA must provide for payment in cash at closing of the Expense Reimbursement and the Termination Fee to the Stalking Horse Purchaser.

6.      Deposit.  Each Bid must be accompanied by a cash deposit in the amount equal to 10% of the Aggregate Purchase Price of the Bid, to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "Deposit").

7.      Qualified Bid Documents.  Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid and shall include a schedule of assumed contracts to the extent applicable to the Bid, and a copy of the Proposed APA clearly marked to show all changes requested by the Qualified Bidder, including those related to the respective Aggregate Purchase Price and assets to be acquired by such Qualified Bidder, as well as all other material documents integral to such bid (the "Qualified Bid Documents").

8.      Committed Financing.  To the extent that a Bid is not accompanied by evidence of the Qualified Bidder's capacity to consummate the sale set forth in its Bid with cash on hand, each Bid must include unconditional committed financing from a reputable financing institution, documented to the satisfaction of the Debtors in consultation with the Consultation Parties, that demonstrates that the Qualified Bidder has: (i) received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Aggregate Purchase Price and other obligations under

its Bid; and (ii) adequate working capital financing or resources to finance operations for the applicable Assets and the proposed transactions. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors, in consultation with the Consultation Parties.

9.    <u>Contingencies; No Financing or Diligence Outs</u>. A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall be acceptable to the Debtors in their business judgment, after consultation with the Consultation Parties.

10.    <u>Identity</u>. Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each Bid Sponsor, if such Qualified Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such Bid), and the complete terms of any such participation. Each Bid must also fully disclose whether any current or former officer, director, or equity holder of the Debtors, or any entity affiliated with any current or former officer, director, or equity holder of the Debtors, will be bidding or otherwise participating in connection with such Bid, including any employment or compensation arrangements being negotiated or agreed to between the Qualified Bidder and any employee of the Debtors. Under no circumstances shall any undisclosed insiders, principals, equity holders, or financial backers of the Debtors be associated with any Bid (including any Overbid at the Auction). Each Bid must also include contact information for the specific persons and counsel whom Guggenheim Securities, LLC and Paul, Weiss, Rifkind, Wharton & Garrison LLP, should contact regarding such Bid.

11.    <u>Adequate Assurance of Future Performance</u>. Each Bid must (i) identify the executory contracts and unexpired leases to be assumed and assigned in connection with the proposed Sale, (ii) provide for the payment of all cure costs related to such executory contracts and unexpired leases by the Qualified Bidder and (iii) demonstrate, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, that the Qualified Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases.

12.    <u>Time Frame for Closing</u>. A Bid by a Qualified Bidder must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors after consultation with the Consultation Parties, which time frame may include a closing by no later than August 31, 2020.

13.    <u>Binding and Irrevocable</u>**.**  A Qualified Bidder's Bid for the applicable Assets shall be irrevocable unless and until the Debtors notify such Qualified Bidder that such Bid has not been approved as a Successful Bid or a Backup Bid at the Sale Hearing.

14.    <u>Expenses; Disclaimer of Fees</u>**.**  Each Bid (other than the Stalking Horse Bid, and solely to the extent set forth in the Stalking Horse APA) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.  For the avoidance of doubt, no Qualified Bidder (other than the Stalking Horse Bidder, and solely to the extent set forth in the Stalking Horse APA) will be permitted to request at any time, whether as part of the Auction, if any, or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

15.    <u>Authorization</u>.  Each Bid must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors, in consultation with the Consultation Parties) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

16.    <u>As-Is, Where-Is</u>**.**  Each Bid must include a written acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or such assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the applicable Assets or the completeness of any information provided in connection therewith or the Auction, except those expressly stated in the Stalking Horse APA.

17.    <u>Adherence to Bid Procedures</u>**.**  By submitting a Bid, each Qualified Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these Bidding Procedures and after the conclusion of the Auction, if any, agrees not to submit a Bid, or seek to reopen the Auction.

18.    <u>Government Approvals</u>**.**  Each Bid must include a description of all governmental, licensing, regulatory, or other approvals or consents that are required to close the proposed Sale, together with evidence satisfactory to the Debtors, after consultation with the Consultation Parties, of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals;

19. <u>Government Approvals Timeframe</u>.  Each Bid must set forth an estimated timeframe for obtaining any required internal, governmental, licensing, regulatory or other approvals or consents for consummating any proposed Sale.

20. <u>Consent to Jurisdiction</u>.  By submitting a Bid, each Qualified Bidder agrees and shall be deemed to have agreed, to submit to the jurisdiction of the Bankruptcy Court and waives any right to a jury trial in connection with any disputes relating to the Debtors' qualification of bids, the Auction, if any, the construction and enforcement of these Bidding Procedures, the Sale documents, and the Closing, as applicable.

21. <u>Bid Deadline</u>.  Each Bid, other than any Stalking Horse Bid, must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before **5:00 p.m. (prevailing Eastern Time) on July 6, 2020** by:

    (a) **Debtors**.  Templar Energy, LLC, 4700 Gaillardia Pkwy, Suite 200, Oklahoma City, Oklahoma 73142, Attn: Brian A. Simmons (Brian.Simmons@templar.energy).

    (b) **Debtors' Counsel**.  Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Paul M. Basta (pbasta@paulweiss.com), Robert A. Britton (rbritton@paulweiss.com), Sarah Harnett (sharnett@paulweiss.com) and Teresa Lii (tlii@paulweiss.com).

    (c) **Debtors' Co-Counsel**.  Young Conaway Stargatt and Taylor, LLP, Rodney Square, 1000 North Kind Street, Wilmington, Delaware 19801, Attn: Pauline K. Morgan (pmorgan@ycst.com) and Jaime Luton Chapman (jchapman@ycst.com).

    (d) **Debtors' Financial Advisors.** Guggenheim Securities, LLC, 1301 McKinney St, Suite 3100, Houston, Texas 77010, Attn: Attn: Abe Sameei (Abe.Sameei@guggenheimpartners.com) and Alvarez & Marsal North America, LLC, 2100 Ross Avenue, 21st Floor, Dallas, Texas 75201, Attn: Ed Mosley (emosley@alvarezandmarsal.com) and Steve Coverick (scoverick@alvarezandmarsal.com).

## F.   Consultation Parties

The term "<u>Consultation Parties</u>" shall mean the counsel and financial advisor to Bank of America, N.A., in its capacities as the administrative agent (the "<u>RBL Agent</u>") under that certain First Lien Credit Agreement dated as of November 25, 2013 and amended as of August 1, 2019 by that certain Sixth Amendment (as amended, modified, or otherwise supplemented from time to time, the "<u>RBL Credit Agreement</u>") by and among Templar Energy LLC, the guarantors party thereto, the lenders party thereto and the administrative agent (the "<u>DIP Agent</u>", and collectively with the RBL Agent, the "<u>Agents</u>") under the Debtors' senior secured superpriority debtor-in-possession revolving credit facility (the "<u>DIP Facility</u>").  For the avoidance of doubt, in the event that one or more of the Agents submits a Bid, the counsel and financial advisor to the applicable Agent(s)

shall remain Consultation Parties notwithstanding that the Agent(s) are deemed Qualified Bidders. The Debtors shall deliver any Bids received to the Consultation Parties within 24 hours of receipt of such Bid.

**G.    Auction**

1.    Qualified Joint Bid

If one or more Bid(s) that constitute Qualified Bids are received but none of the Bid(s) on their own are better or higher than the Stalking Horse Bid, if the Debtors select a Stalking Horse Bid, then the Debtors, in consultation with their advisors and the Consultation Parties, may (a) elect to conduct a sub-auction, (b) oversee and facilitate a series of negotiations among such Qualified Bidders, or (c) otherwise pursue any process that the Debtors, in consultation with their advisors and the Consultation Parties, believe will result in a value-maximizing joint Bid for the Assets (the "Qualified Joint Bid," and such Qualified Bidders, the "Qualified Joint Bidders").

2.    Cancellation of Auction

If no Qualified Bids other than any Stalking Horse Bid are received in accordance with these Bidding Procedures, then the Debtors may cancel the Auction, and may decide, in the Debtors' reasonable business judgment in consultation with the Consultation Parties, to designate the Stalking Horse Bid as the Successful Bid and pursue entry of the orders approving a Sale of the Assets to the Stalking Horse Bidder pursuant to the Stalking Horse APA.

If the Auction is cancelled, the Debtors shall promptly file a notice of cancellation of the Auction and designation of the Stalking Horse Bid as the Successful Bid.

3.    Bid Assessment Criteria

The Debtors shall evaluate all Qualified Bids and identify the Qualified Bid that is, in the Debtors' judgment, after consultation with the Consultation Parties, the highest or otherwise best Qualified Bid for the Assets (the "Baseline Bid"), and provide copies of the applicable Qualified Bid Documents supporting the applicable Baseline Bid to each Qualified Bidder at or prior to the Auction. When determining the highest or otherwise best Qualified Bid(s) and selecting the winning bidder, as compared to other Qualified Bids, the Debtors may, in consultation with the Consultation Parties, consider the following factors in addition to any other factors that the Debtors deem appropriate:

(a) the number, type, and nature of any changes to the APA or, if applicable, Stalking Horse APA requested by the Qualified Bidder, including the type and amount of assets sought and liabilities to be assumed in the Qualified Bid;

(b) the amount and nature of the total consideration;

(c) the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof;

(d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents;

(e) the tax consequences of such Qualified Bid;

(f) the impact on employees, including the number of employees proposed to be transferred;

(g) the assumption of liabilities, including obligations under contracts and leases;

(h) the cure amounts to be paid; and

(i) the terms and conditions of a transition services agreement (collectively, items (a) through (i) hereof, the "<u>Bid Assessment Criteria</u>").

    4.    <u>Auction Time and Location</u>

The Auction, if any, shall take place at **10:00 a.m. (prevailing Eastern Time) on July 9, 2020** at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York 10019, or such later date and time or location, including by telephone or video conference, as selected by the Debtors, after consultation with the Consultation Parties, and timely communicated to all entities entitled to attend the Auction. The Auction, if any, shall be conducted in a timely fashion according to the procedures set forth herein.

    5.    <u>The Debtors Shall Conduct the Auction</u>

The Debtors, with the assistance of their professionals, shall direct and preside over the Auction, if any, in consultation with the Consultation Parties. At the start of the Auction, the Debtors shall describe the material terms of the Baseline Bid for the Assets on the record. The Debtors shall maintain a written transcript of the Auction and all Bids made and announced at the Auction, if any, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

Qualified Bidders (including any Stalking Horse Bidder) and their legal and financial advisors and the Consultation Parties and their legal and financial advisors, shall be entitled to attend the Auction, if any, and the Qualified Bidders shall appear at the Auction in person (unless otherwise determined by the Debtors), and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders (including the Qualified Joint Bidders, if any) shall be entitled to bid at the Auction, if any. Creditors of the Debtors and representatives of the Office of the United States Trustee for the District of Delaware may attend the Auction if they send written notice by email to Debtors' counsel (insert contact and email) and in such notice identify the representatives who will attend on behalf of the creditor; *provided*, *however*, that the Debtors may limit the number of attendees per creditor to a reasonable number.

The Debtors explicitly reserve the right, in their business judgment and after consultation with the Consultation Parties, to exercise their discretion in conducting the Auction, including determining

whether to adjourn the Auction to facilitate separate discussions between any Qualified Bidders, the Debtors, and/or the Consultation Parties, as applicable.

      6.    <u>Terms of Overbids</u>

"<u>Overbid</u>" means any bid made at the Auction, if any, by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid(s). Each applicable Overbid must comply with the following conditions:

      (a)    **Minimum Overbid Increment.** The Overbid(s) for the Assets shall provide for total consideration with a value that exceeds the value of the consideration under the Baseline Bid(s) by an incremental amount that is not less than $500,000 (as applicable, the "<u>Minimum Overbid Increment</u>"), and successive Overbids shall be higher than the Prevailing Highest Bid (as defined below) by at least the Minimum Overbid Increment.

             The Debtors reserve the right, in consultation with the Consultation Parties, to announce reductions or increases in the Minimum Overbid Increment at any time during the Auction, if any. Additional consideration in excess of the amount set forth in the respective Baseline Bid or Prevailing Highest Bid may include: (a) cash and (b) assumption of liability, which shall be ascribed a value by the Debtors, in consultation with the Consultation Parties, in determining whether the Minimum Overbid Increment has been met.

      (b)    **Conclusion of Each Overbid Round.** Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, after consultation with the Consultation Parties, extend from time to time, the "<u>Overbid Round Deadline</u>") by which time any Overbids must be submitted to the Debtors.

      (c)    **Overbid Alterations.** An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid so long as, after giving effect to the same, the terms of the Overbid are no less favorable to the Debtors' estates than any prior Bid or Overbid of such Qualified Bidder, as determined in the Debtors' reasonable business judgment after consultation with the Consultation Parties, and shall otherwise comply with the terms of these Bidding Procedures.

      (d)    **Announcing Highest Bid.** Subsequent to each Overbid Round Deadline, the Debtors, shall announce whether the Debtors have identified in the applicable Overbid round, an Overbid (or combination of Overbids) as being higher or otherwise better than, in the Overbid round, the Baseline Bid plus the Minimum Overbid Increment, or in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>"). The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid

designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

7.      Consideration of Overbids

The Debtors reserve the right, in their reasonable business judgment and after consultation with the Consultation Parties, to adjourn the Auction, if any, one or more times to, among other things: (i) facilitate discussions between and amongst the Debtors, the Qualified Bidders and the Consultation Parties, as appropriate; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtors and the Consultation Parties with such additional evidence as the Debtors, in their reasonable business judgment, after consultation with the Consultation Parties, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount.

8.      Closing the Auction

(a)      The Auction, if any, shall continue until there is one Bid (or a combination of Bids) for the Assets that the Debtors determine, in their reasonable business judgment, after consultation with the Consultation Parties, to be the highest or otherwise best Bid (or Bids) for the Assets.  Such Bid(s) shall be declared the "Successful Bid" and such Qualified Bidder(s), the "Successful Bidder," at which point the Auction will be closed.  The Auction, if any, shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid.  Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Bankruptcy Court of the Successful Bid.

(b)      The Successful Bidder shall, within one business day after the conclusion of the Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Successful Bid.  The Successful Bid may not be assigned to any party without the consent of the Debtors after consulting with the Consultation Parties.

(c)      The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, if any, and any such Bids or Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

(d)      As soon as reasonably practicable after closing the Auction, if any, and in any event not less than one business day following closing the Auction, the Debtors shall cause a notice of Successful Bid and Successful Bidder, and the Qualified Bid Documents for the Successful Bid and Backup Bid to be filed with the Bankruptcy Court.

26578260.1

(e)     To the extent that any Qualified Bid is modified before, during, or after the Auction, the Debtors reserve the right to require that such Qualified Bidder adjust its deposit so that it equals 10% of the aggregate cash portion of the Aggregate Purchase Price.

9.     No Collusion; Good-Faith *Bona Fide* Offer**.**

Each Qualified Bidder participating in the Auction will be required to confirm on the record at the Auction, that (a) it has not engaged in any collusion with respect to the bidding and the Auction, (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder or Backup Bidder, and (c) the Qualified Bidder agrees to serve as the Backup Bidder if its Qualified Bid is the next highest or otherwise best bid after the Successful Bid.

## H.     Backup Bidder

1.     Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted for the Assets, the Qualified Bidder with the next-highest or otherwise second-best Bid at the Auction for the Assets, as determined by the Debtors in the exercise of their reasonable business judgment, after consultation with the Consultation Parties (the "Backup Bid"), shall be required to serve as a backup bidder (the "Backup Bidder") for such Assets, and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

2.     The identity of the Backup Bidder and the amount and material terms of the Backup Bid shall be announced by the Debtors at the conclusion of the Auction, if any, at the same time the Debtors announce the identity of the Successful Bidder.  The Backup Bidder shall be required to keep its Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until the closing of the transaction with the applicable Successful Bidder.  The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder.

3.     The Backup Bidder shall, within one business day after the conclusion of the Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Backup Bid.  The Backup Bid may not be assigned to any party without the consent of the Debtors after consulting with the Consultation Parties.

All Qualified Bids (other than the Successful Bid and the Backup Bid) shall be deemed rejected by the Debtors on and as of the date of approval of the Successful Bid and Backup Bid by the Bankruptcy Court.

## I.     Reservation of Rights

The Debtors reserve their rights to modify these Bidding Procedures, in their reasonable business judgment and with the consent of the Consultation Parties (such consent not to be unreasonably withheld), in any manner that will best promote the goals of the bidding process, or impose, at or

prior to the Auction, if any, additional customary terms and conditions on the sale of the Assets, including: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction, including at the Auction and/or adjourning the Sale Hearing, including in open court, without further notice; (c) modifying the Bidding Procedures and/or adding procedural rules or methods of bidding that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) waiving, or imposing additional, terms and conditions set forth herein with respect to Potential Bidders and (f) rejecting any or all bids or Bids; *provided, however*, that the Debtors may not modify the rules, procedures, or deadlines, or adopt new rules, procedures, or deadlines that would impair in any material respect any Stalking Horse Bidder's right to payment of the Termination Fee or the Expense Reimbursement unless (x) agreed in writing by such Stalking Horse Bidder and the Debtors (in consultation with the Consultation Parties) or (y) ordered by the Bankruptcy Court.

**J.**     **Approval of Sale Transactions** The hearing to consider approval of the Sale of the Assets to the Successful Bidder, and the approval of Backup Bid are currently scheduled to take place on or before **July 14, 2020 at 10:30 a.m. (prevailing Eastern Time)** before the Honorable Brendan L. Shannon, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 6th Floor, Wilmington, Delaware 19801 (the "Sale Hearing")

**The Sale Hearing may be adjourned or continued to a later date by the Debtors, after consultation with the Consultation Parties, by sending notice prior to, or making an announcement at, the Sale Hearing.   No further notice of any such adjournment or continuance will be required to be provided to any party (including any Stalking Horse Bidder).**

At the Sale Hearing, the Debtors, in consultation with their advisors and the Consultation Parties, shall present the Successful Bid and any Backup Bid, to the Bankruptcy Court for approval.  The Sale Order submitted at the Sale Hearing shall provide that:  (i) if the Successful Bid is not consummated, the Debtors may file a notice with the Bankruptcy Court designating the applicable Backup Bidder(s) as the applicable Successful Bidder(s), and such Backup Bidder(s) shall be deemed the Successful Bidder(s) for all purposes; and (ii) the Debtors will be authorized, but not required, to consummate all transactions contemplated by the applicable Backup Bid, once so designated as the Successful Bid, without further order of the Bankruptcy Court or notice to any party.

**K.**     **Return of Deposits**

The Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court; *provided, however*, that the Deposit of any Successful Bidder (including any Backup Bidder that becomes a Successful Bidder) may be forfeited to the Debtors or credited toward the Aggregate Purchase Price set forth in the Successful Bid, in either case as set forth in these Bidding Procedures.  The Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing.  The Deposit of the Backup Bidder, if any, shall be returned to such Backup Bidder no later than three (3) business days after the closing of the transaction with the Successful Bidder.  Upon the return of the Deposits, their respective owners shall receive any and

all interest that will have accrued thereon. If the Successful Bidder (or Backup Bidder, as applicable) timely closes on its transaction, its Deposit shall be credited towards the applicable purchase price(s). If the Successful Bidder (or Backup Bidder, if applicable) fails to consummate a sale transaction because of a breach or failure to perform on the part of the Successful Bidder (or Backup Bidder, if applicable), the Debtors will not have any obligation to return the Deposit deposited by the Successful Bidder (or Backup Bidder, if applicable), and such Deposit shall irrevocably become property of the Debtors as partial compensation for the damages caused to the Debtors and their estates as a result of such breach or failure to perform without prejudice to any claims, rights, or remedies of the Debtors or their estates for additional damages.

**M.**     **Fiduciary Out**

**Nothing in these Bidding Procedures shall restrain the board of directors, board of managers, or such similar governing body of any of the Debtors or their affiliates from taking any action, or refraining from taking any action to the extent that such board of directors, board of managers, or such similar governing body determines, based on the written advice of counsel that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law; *provided however*, that the Debtors shall provide the Consultation Parties with notice of such action or inaction as soon as practicable.**

**N.**     **Credit Bid**

The Agents, on behalf of the RBL Lenders and/or the lenders under the DIP Facility, as applicable, shall be deemed to be Qualified Bidders and, subject to section 363(k) of the Bankruptcy Code, may submit a credit bid up to the full amount of their respective obligations on their respective collateral any time, including after the Bid Deadline or during the Auction and any such bid will be considered a Qualified Bid, unless otherwise ordered by the Court for cause; *provided, however*, that (i) any such Credit Bid shall only serve as a "back-up" bid to any Stalking Horse Bid if the Debtors select a Stalking Horse Bid, and (ii) the Agents must provide Qualified Bid Documents to the Debtors no later than two (2) business days after the Bid Deadline and such Credit Bid shall remain irrevocable until the closing of the sale, if applicable (a "Credit Bid" and the Agent(s), upon such submission, "Credit Bidder(s)"). Other than with respect to the Qualified Bid Documents, the Credit Bid shall not be subject to the requirements in the Bidding Procedures for a Qualified Bid or a Backup Bid. For the avoidance of doubt, the Credit Bidder cannot be designated as a Backup Bidder unless such party consents to such designation.

**O.**     **DIP Order**

Notwithstanding anything to the contrary contained in these Bidding Procedures or otherwise, (i) the right of the Agents to consent to the sale of any portion of their collateral, including, without limitation, any Assets, on terms and conditions acceptable to the Agent, are hereby expressly reserved and not modified, waived or impaired in any way by these Bidding Procedures, and (ii) nothing in these Bidding Procedures shall amend, modify, or impair any provision of the DIP Order, or the rights of the Debtors or the Agents or lenders thereunder.

26578260.1

17

**EXHIBIT 2**

**SALE NOTICE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TEMPLAR ENERGY LLC, *et al.*,[1] | Case No. 20-11441 (BLS) |
| Debtors. | (Jointly Administered) |

**NOTICE OF PROPOSED BIDDING PROCEDURES,**
**AUCTION DATE, AND SALE HEARING**

    **PLEASE TAKE NOTICE** that Templar Energy LLC and its affiliated debtors and debtors-in-possession (collectively the "Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Chapter 11 Cases") in the United States for the District of Delaware (the "Bankruptcy Court") on **June 1, 2020.**

    **PLEASE TAKE FURTHER NOTICE** that, on **June 1, 2020**, the *Debtors' Motion for Entry of Orders (I) (A) (I) Approving Bidding Procedures for the Sale of all or Substantially all of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling a Sale Hearing and Objection Deadlines with respect to the Sale, (IV) Scheduling an Auction, (V) Approving the Form and Manner of Notice of the Sale Hearing and Auction, (VI) Approving Contract Assumption and Assignment Procedures, and (VII) Granting Related Relief; and (B) (I) Approving the Sale of the Debtors' Assets Free and Clear of all Liens, Claims, Interests, and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* was filed with the Bankruptcy Court [Docket No. ___] (the "Sale Motion").[2] Through the Sale Motion, the Debtors seek, among other things, approval of certain procedures (the "Bidding Procedures") to govern the sale (the "Sale") of all or substantially all of the Debtors' assets (the "Assets") pursuant to section 363 of the Bankruptcy Code to a Successful Bidder (as defined in the Bidding Procedures) at an auction, free and clear of all claims, liens and encumbrances. The proposed Bidding Procedures provide that Debtors may, with the consent (such consent not to be unreasonably withheld) of the DIP Agent, the Majority Lenders (as defined in any order approving the DIP Facility) and the RBL Agent, execute one or more asset purchase agreements with one or more Stalking Horse Bidders in connection with a Sale of the Debtors' Assets. The Debtors propose that, in the event that the Debtors select one or more parties to serve as a Stalking Horse Bidder, the Debtors will promptly file with the Bankruptcy Court and post on the website of the Court-appointed claims and noticing agent for the Debtors' Chapter 11 Cases, Kurtzman Carson Consultants LLC,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Templar Energy LLC (4719), TE Holdcorp, LLC (6730), TE Holdings, LLC (3115), TE Holdings II, LLC (N/A), Templar Operating LLC (0810), Templar Midstream LLC (3275), and TE Holdings Management LLC (7467). The address of the Debtors' corporate headquarters is 4700 Gaillardia Parkway, Suite 200, Oklahoma City, Oklahoma 73142.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order, as applicable.

www.kccllc.net/TemplarEnergy (the "Case Website"), a notice (a "Stalking Horse Notice") that includes the following: (a) the identification of the Stalking Horse Bidder(s); (b) a copy of the Stalking Horse APA; (c) the purchase price provided for in the Stalking Horse APA; (d) the deposit paid by the Stalking Horse Bidder; and (e) the amount of any Break-Up Fee or Expense Reimbursement;

**PLEASE TAKE FURTHER NOTICE THAT THE BIDDING PROCEDURES HAVE NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE** that approval of the Sale of the Assets to the Successful Bidder may result in, among other things, the assumption, assignment, and/or transfer by the Debtors of certain executory contracts and unexpired leases. If you are counterparty to an executory contract or unexpired lease with the Debtors, you will receive a separate notice regarding the Assumption and Assignment Procedures that contains additional relevant dates and other information that may impact you as counterparty to such executory contract or unexpired lease.

**PLEASE TAKE FURTHER NOTICE**, the Bankruptcy Court has not yet approved the entry of the proposed order (the "Proposed Bidding Procedures Order"), attached as Exhibit A to the Sale Motion, approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale and the Auction. A hearing (the "Bidding Procedures Hearing") regarding entry of the Proposed Bidding Procedures Order has been scheduled for **June 30, 2020 at 11:30 a.m. (prevailing Eastern Time)**, which hearing may be adjourned and continued without further notice than announcement in open court or through the filing of a notice or other document on the Bankruptcy Court's docket. To the extent that there are any inconsistencies between the terms of an order entered by the Bankruptcy Court approving the Bidding Procedures (the "Entered Bidding Procedures Order"), the proposed Bidding Procedures, and the summary descriptions of the proposed Bidding Procedures in this notice, the Entered Bidding Procedures Order shall control in all respects. All interested bidders should carefully read the Proposed Bidding Procedures Order and the proposed Bidding Procedures attached to the Sale Motion in their entirety. The proposed deadline by which all Bids must be *actually received* is **5:00 p.m. on July 6, 2020 (prevailing Eastern Time)** (the "Bid Deadline").

<u>**CONTACT PERSONS FOR PARTIES INTERESTED IN SUBMITTING A BID**</u>

All interested parties are invited to provide materials (as described in the proposed Bidding Procedures) to apply to become a Potential Bidder (as defined in the proposed Bidding Procedures) and submit a Bid in accordance with the proposed Bidding Procedures and the Proposed Bidding Procedures Order. The Bidding Procedures set forth in detail the requirements for submitting a Qualified Bid, and any person interested in making an offer to purchase the Acquired Assets **must** comply strictly with the Bidding Procedures. **Only Qualified Bids will be considered by the Debtors**. Any persons interested in making an offer to purchase the Assets should contact:

| Proposed Investment Banker to Debtors | Proposed Lead Counsel to Debtors |
|---|---|
| Guggenheim Securities, LLC<br>1301 McKinney St, Suite 3100<br>Houston, Texas 77010<br>Attn: Attn: Abe Sameei<br>(Abe.Sameei@guggenheimpartners.com)<br>(713) 300-1330 | Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas,<br>New York, New York 10019<br>Attn:  Robert A. Britton (rbritton@paulweiss.com)<br>Sarah Harnett (sharnett@paulweiss.com)<br>Teresa Lii (tlii@paulweiss.com)<br>(212) 373-3000 |

## OBTAINING ADDITIONAL INFORMATION

Copies of the Sale Motion (including the Proposed Bidding Order and proposed Bidding Procedures) the Entered Bidding Procedures Order, the Stalking Horse Notice, if any, as well as all related exhibits including any Stalking Horse APA, and all other documents filed with the Bankruptcy Court, are available free of charge on the Case Website (ww.kccllc.net/TemplarEnergy).

## IMPORTANT PROPOSED DATES AND DEADLINES

The dates and deadlines set forth below have been requested by the Debtors but are subject to Bankruptcy Court-approval at the Bidding Procedures Hearing.  **These dates and deadlines will be finalized in the Entered Bidding Procedures Order and remain subject to change.**

1.    The proposed deadline for the Debtors to select a Stalking Horse Bidder is **June 26, 2020**.

2.    The proposed deadline to submit a Qualified Bid is **5:00 p.m. on July 6, 2020 (prevailing Eastern Time).**

3.    The proposed deadline to file an objection with the Bankruptcy Court to the entry of an order approving the sale (the "Sale Order") and, if applicable, all objections related to the Stalking Horse Bidder (collectively, "Sale Objections") is **4:00 p.m. (prevailing Eastern Time) on July 7, 2020** (the "Sale Objection Deadline").

4.    In the event that the Debtors timely receive a Qualified Bid in addition to the Qualified Bid of any Stalking Horse Bidder, the Debtors intend to conduct an Auction for the Assets.  The Debtors proposed to hold the Auction, if any, at **10:00 a.m. (prevailing Eastern Time) on July 9, 2020** at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York or such other location, including by telephone or video conference, as shall be timely communicated to all entities entitled to attend the Auction.  Only Qualified Bidders (including any Stalking Horse Bidder) and their legal and financial advisors and the Consultation Parties (as defined in the Bidding Procedures) and their legal and financial advisors, shall be entitled to attend the Auction.  Creditors of the Debtors and representatives of the Office of the United States Trustee for the District of

Delaware may attend the Auction if they send written notice by email to Debtors' counsel (insert contact and email) and in such notice identify the representatives who will attend on behalf of the creditor; *provided*, *however*, that the Debtors may limit the number of attendees per creditor to a reasonable number.  If the Auction is cancelled, the Debtors shall file a notice of cancellation of the Auction.

5.     The proposed deadline for objections to the conduct of the Auction and the terms of a Sale to a Successful Bidder other than the Stalking Horse Bidder, if any (collectively, "Auction Objections") **is one business day prior to the Sale Hearing** (the "Auction Objection Deadline").

6.     The Debtors propose that the hearing (the "Sale Hearing") to consider the proposed Sale be held on **July 14, 2020**, or such other date as determined by the Court, at 824 North Market Street, Wilmington, Delaware 19801.

7.     Upon approval of the Bidding Procedures, the Entered Bidding Procedures Order setting forth the finalized dates and deadlines shall be made available online at www.kccllc.net/TemplarEnergy.

## FILING SALE OBJECTIONS

Sale Objections, if any, must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of Practice and Procedure for the United States Bankruptcy Court for the District of Delaware, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtors' estate or properties, the basis for the objection, and the specific grounds therefore and shall be filed and served upon the following so that such objections are *actually received* by the Sale Objection Deadline: (a) proposed co-counsel for the Debtors (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Paul M. Basta; Robert A. Britton; Sarah Harnett; and Teresa Lii (emails: pbasta@paulweiss.com; rbritton@paulweiss.com; sharnett@paulweiss.com; and tlii@paulweiss.com)) and (ii) Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801 (Attn: Pauline K. Morgan and Jaime Luton Chapman (emails: pmorgan@ycst.com and jchapman@ycst.com)); (b) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801 (Attn: Jane M. Leamy (email: jane.m.leamy@usdoj.gov)); (c) counsel to the DIP Agent and RBL Agent (i) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA 02110 (Attn: Amy L. Kyle and Andrew J. Gallo (emails: amy.kyle@morganlewis.com and andrew.gallo@morganlewis.com)) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins (email: collins@rlf.com)); and (d) counsel to any statutory committee appointed in these Chapter 11 Cases.

Any failure of any entity to file a Sale Objection on or before the Sale Objection Deadline shall be deemed to constitute consent to the sale of the Assets to the Successful Bidder or the Backup Bidder (as defined in the Bidding Procedures) and the other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion, the Auction, the Sale, or the Debtors' consummation and performance of the terms of the Stalking

Horse APA or the purchase agreement entered into with the Successful Bidder or the Backup Bidder.

**CONSEQUENCES OF FAILING TO**
**TIMELY FILE AND SERVE A SALE OBJECTION**

**ANY PARTY OR ENTITY THAT FAILS TO TIMELY FILE AND SERVE A SALE OBJECTION ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AFFECTED THEREUNDER.**

Dated:    [___], 2020
              Wilmington, Delaware

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Paul M. Basta
Robert A. Britton
Sarah Harnett
Teresa Lii
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Proposed Co-Counsel to the Debtors and Debtors-in-Possession*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pauline K. Morgan (No. 3650)
Jamie Luton Chapman (No. 4936)
Tara C. Pakrouh (No. 6192)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

*Proposed Co-Counsel to the Debtors and Debtors-in-Possession*

## **EXHIBIT 3**

**CURE NOTICE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TEMPLAR ENERGY LLC, *et al.*,[1] | Case No. 20-11441 (BLS) |
| Debtors. | (Jointly Administered) |

### NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND PROPOSED CURE AMOUNTS

**PLEASE TAKE NOTICE** that Templar Energy LLC and its affiliated debtors and debtors-in-possession (collectively the "Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Chapter 11 Cases") in the United States for the District of Delaware (the "Bankruptcy Court") on **June 1, 2020.**

**PLEASE TAKE FURTHER NOTICE** that, on **June 1, 2020**, the *Debtors' Motion for Entry of Orders (I) (A) (I) Approving Bidding Procedures for the Sale of all or Substantially all of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling a Sale Hearing and Objection Deadlines with respect to the Sale, (IV) Scheduling an Auction, (V) Approving the Form and Manner of Notice of the Sale Hearing and Auction, (VI) Approving Contract Assumption and Assignment Procedures, and (VII) Granting Related Relief; and (B) (I) Approving the Sale of the Debtors' Assets Free and Clear of all Liens, Claims, Interests, and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* was filed with the Bankruptcy Court [Docket No.____] (the "Sale Motion").[2] Through the Sale Motion, the Debtors seek, among other things, approval of certain procedures (the "Bidding Procedures") to govern the sale (the "Sale") of all or substantially all of the Debtors' assets (the "Assets") pursuant to section 363 of the Bankruptcy Code to a Successful Bidder (as defined in the Bidding Procedures) at an auction, free and clear of all claims, liens and encumbrances. The proposed Bidding Procedures provide that Debtors may execute one or more asset purchase agreements with one or more Stalking Horse Bidders in connection with a Sale of the Debtors' Assets. The Debtors propose that, in the event that the Debtors select one or more parties to serve as a Stalking Horse Bidder, the Debtors will promptly file with the Bankruptcy Court and post on the website of the Court-appointed claims and noticing agent for the Debtors' Chapter 11 Cases, Kurtzman Carson Consultants LLC ("KCC"), www.kccllc.net/TemplarEnergy (the "Case Website"), a notice (a "Stalking Horse Notice") that

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Templar Energy LLC (4719), TE Holdcorp, LLC (6730), TE Holdings, LLC (3115), TE Holdings II, LLC (N/A), Templar Operating LLC (0810), Templar Midstream LLC (3275), and TE Holdings Management LLC (7467). The address of the Debtors' corporate headquarters is 4700 Gaillardia Parkway, Suite 200, Oklahoma City, Oklahoma 73142.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the. Bidding Procedures Order, as applicable.

includes the following: (a) the identification of the Stalking Horse Bidder(s); (b) a copy of the Stalking Horse APA; (c) the purchase price provided for in the Stalking Horse APA; (d) the deposit paid by the Stalking Horse Bidder; and (e) the amount of any Break-Up Fee or Expense Reimbursement;

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Sale Motion, the Debtors also seek approval of certain procedures for the assumption and assignment of executory contracts and unexpired leases to any Stalking Horse Bidder or such other Successful Bidder in connection with the Sale (the "Assignment Procedures").

**PLEASE TAKE FURTHER NOTICE** that on [●], 2020, the Bankruptcy Court entered the *Order (A) Approving Bidding Procedures for the Sale of all or Substantially all of the Debtors' Assets, (B) Approving Bid Protections, (C) Scheduling a Sale Hearing and Objection Deadlines with respect to the Sale, (D) Scheduling an Auction, (E) Approving the Form and Manner of Notice of the Sale Hearing and Auction, (F) Approving Contract Assumption and Assignment Procedures, and (G) Granting Related Relief* [Docket No. __] (the "Bidding Procedures Order"), approving, among other things, the Bidding Procedures and the Assignment Procedures. ***Recipients of this notice should carefully read the Bidding Procedures Order in its entirety.***

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures Order, the Sale Hearing is scheduled to take place on **July 14, 2020 at 10:30 a.m. (prevailing Eastern time)** before the Honorable Brendan L. Shannon, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 6th Floor, Wilmington, Delaware 19801, or as soon thereafter as counsel may be heard.[3]

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO ONE OR MORE CONTRACT(S) OR LEASE(S) THAT MAY BE EXECUTORY CONTRACT(S) OR UNEXPIRED LEASE(S) WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON EXHIBIT A, ATTACHED HERETO.[4]**

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order, the Debtors **may** assume and assign to any Stalking Horse Bidder or such other Successful Bidder, the executory contract(s) or unexpired lease(s) listed on **Exhibit A** attached hereto (each, a "Contract") to which you are a counterparty.  The Debtors have conducted a review of their books and records and have determined that the cure amounts required to be paid pursuant to Bankruptcy Code section 365(b) in respect of such Contract(s) (the "Cure Amount") is as set forth on **Exhibit A** attached hereto.  **If you disagree with the proposed Cure Amount, object to the proposed assumption and assignment of the Contract(s) to any Stalking Horse Bidder or object to any Stalking Horse Bidder's ability to provide adequate assurance of future performance with respect to any Contract(s) if the Debtors select a Stalking Horse, you must file an objection (a "Cure/Assignment Objection"), stating, with specificity the nature of your**

---

[3]    Dates relating to the Sale, including the scheduled dates for the Auction and Sale hearing may be changed in accordance with the Bidding Procedures Order.

[4]    This Notice is being sent to counterparties to contracts and leases that may be executory contracts and unexpired leases.  This notice is *not* an admission by the Debtors that such contract or lease is executory or unexpired.

objections, with the Bankruptcy Court no later than 4:00 p.m. (prevailing Eastern Time) on **[___], 2020 (the "Cure/Assignment Objection Deadline")**. Cure/Assignment Objections must be filed and served *so as to be actually received by the Cure/Assignment Objection Deadline* by: (a) proposed co-counsel for the Debtors (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Paul M. Basta; Robert A. Britton; Sarah Harnett; and Teresa Lii (emails: pbasta@paulweiss.com; rbritton@paulweiss.com; sharnett@paulweiss.com; and tlii@paulweiss.com)) and (ii) Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801 (Attn: Pauline K. Morgan and Jaime Luton Chapman (emails: pmorgan@ycst.com and jchapman@ycst.com)); (b) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801 (Attn: Jane M. Leamy (email: jane.m.leamy@usdoj.gov)); (c) counsel to the DIP Agent and RBL Agent (i) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA 02110 (Attn: Amy L. Kyle and Andrew J. Gallo (emails: amy.kyle@morganlewis.com and andrew.gallo@morganlewis.com)) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins (email: collins@rlf.com)); and (d) counsel to any statutory committee appointed in these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE** that the Debtors propose that if the counterparty to any Contract(s) fails to file an objection by the Cure/Assignment Objection Deadline to (a) the Cure Amount(s), (b) the proposed assumption and assignment of all or some of the Contracts, or (c) adequate assurance of any Stalking Horse Bidder's ability to perform under the Contracts, then (i) that counterparty will be deemed to have agreed and stipulated to the accuracy of the Cure Amount(s) set forth on this Exhibit A, (ii) that counterparty shall be forever barred, estopped, and enjoined from asserting any additional cure amount under or in respect of the Contract(s), and (iii) that counterparty will be forever barred from objecting to the assumption and assignment of the Contract(s) to the Stalking Horse Bidder or Backup Bidder, including on the basis that there was a failure to provide adequate assurance of future performance.

**PLEASE TAKE FURTHER NOTICE** that, promptly following the Debtors' selection of the Successful Bidder and the conclusion of the Auction (if any), the Debtors shall file notice of the Successful Bid and Successful Bidder with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that, in the event the Stalking Horse Bidder is not the Successful Bidder, any counterparty to a Contract shall have the right to object to the adequacy of assurance of future performance provided by, such Successful Bidder on or before **[●], 2020 at 10:00 a.m. (prevailing Eastern Time)**. To the extent such counterparty does not object in accordance herewith, the Bankruptcy Court may enter an order forever barring such counterparty to such Contract(s) from objecting to the assignment to such Successful Bidder including any objection on the basis that there was a failure to provide adequate assurance of future performance.

**PLEASE TAKE FURTHER NOTICE** that with respect to any Contract(s) assumed and assigned to the Stalking Horse Bidder, Backup Bidder, or other Successful Bidder (the "Assumed Contracts"), if a non-Debtor party to an Assumed Contract has objected solely to the proposed Cure Amount, the Debtors or an assignee may pay the undisputed portion of such Cure Amount and place the disputed amount in a segregated account pending further order of the Court or mutual agreement of the parties. So long as such disputed amounts are held in such segregated account, the Debtors may, without delay, assume and assign such Assumed Contract to the applicable

assignee.  Under such circumstances, the objecting non-Debtor counterparty's recourse is limited to the funds held in such segregated account.

**PLEASE TAKE FURTHER NOTICE** that following the payment of the Cure Amount(s) (subject to the preceding paragraph), the Debtors' filing and service of a notice regarding the closing of the Sale shall serve as notice that such Assumed Contracts have actually been assumed and assigned.

**PLEASE TAKE FURTHER NOTICE** that notwithstanding anything herein, this Notice shall not be deemed to be an assumption, assignment, adoption, rejection, termination, or concession to the executory nature of any Contract(s).  Moreover, the Debtors explicitly reserve their rights, in their sole discretion, to reject or assume each Contract pursuant to section 365(a) of the Bankruptcy Code and nothing herein (a) alters in any way the prepetition nature of the Contract(s) or the validity, priority, or amount of any claims of a counterparty to any Contract against the Debtors that may arise under such Contract, (b) creates a postpetition contract or agreement, or (c) elevates to administrative expense priority any claims of an counterparty to a Contract against the Debtors that may arise under such Contract.

**PLEASE TAKE FURTHER NOTICE** that this Notice is subject to the full terms and conditions of the Sale Motion, the Bidding Procedures Order, and the Bidding Procedures, which shall control in the event of any conflict, and the Debtors urge parties in interest to review such documents in their entirety.  Copies of the Sale Motion, the Bidding Procedures, and the Bidding Procedures Order, in addition to any related documents that may be filed, may be obtained by accessing (a) the Case Website (www.kccllc.net/TemplarEnergy), for no charge, or by requesting by phone from KCC at (866) 515-4713, or (b) the Bankruptcy Court's internet site: https://ecf.deb.uscourts.gov, for a fee, through an account obtained from the PACER website at http://pacer.psc.uscourts.gov.

Dated:    [___], 2020
              Wilmington, Delaware

| | |
|---|---|
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| Paul M. Basta | Pauline K. Morgan (No. 3650) |
| Robert A. Britton | Jaime Luton Chapman (No. 4936) |
| Sarah Harnett | Tara C. Pakrouh (No. 6192) |
| Teresa Lii | Rodney Square |
| 1285 Avenue of the Americas | 1000 North King Street |
| New York, New York 10019 | Wilmington, Delaware 19801 |
| Telephone: (212) 373-3000 | Telephone:  (302) 571-6600 |
| Facsimile: (212) 757-3990 | Facsimile:  (302) 571-1253 |
| | |
| *Proposed Co-Counsel to the Debtors and Debtors-in-Possession* | *Proposed Co-Counsel to the Debtors and Debtors-in-Possession* |

## EXHIBIT A TO CURE NOTICE

| Counterparty Name | Contract/Lease | Cure Amount |
|---|---|---|
|  |  |  |